# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 15-CV-62590-BLOOM/Valle

SHERIDAN HEALTHCORP, INC., a
Florida corporation,

      Plaintiff,

vs.

AETNA HEALTH INC., a Florida Corporation,
AETNA LIFE INSURANCE CO., a Connecticut
corporation, COVENTRY HEALTH AND LIFE
INSURANCE COMPANY, a Missouri
Corporation, COVENTRY HEALTH CARE OF
FLORIDA, INC., a Florida corporation,
COVENTRY HEALTH PLAN OF FLORIDA,
INC., a Florida corporation, and FIRST HEALTH
LIFE AND HEALTH INSURANCE COMPANY,
a Texas corporation,

      Defendants.

_____/

## PLAINTIFF'S MOTION TO REMAND AND INCORPORATED
## MEMORANDUM OF LAW

Plaintiff, Sheridan Healthcorp., Inc. ("Sheridan"), moves to remand this action to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, and states as follows:

## INTRODUCTION

This action must be remanded because Defendants' Removal Notice is both untimely and absent the "clear and certain" standard for "other paper" removal.  First, Defendants, in support of removal, argue, among others, that Sheridan's only right to payment as a health care provider stems from patient assignments that are *ipso facto* ERISA-preempted.  Because this argument was available to Defendants at the inception of the action, and not recently discovered by "other papers," the removal must fail.  By failing to remove the action when filed, Defendants further readily admit, as they must under binding Eleventh Circuit precedent, that Sheridan's state law

provider "rate of payment"  dispute as pled is neither pre-empted by ERISA (based on assignments or otherwise) nor FEHBA.

Second, and notwithstanding its untimeliness, Defendants' "other paper" removal simply lacks any credible evidentiary basis, much less the heightened "clear and certain" standard required for a removal under 28 U.S.C. 1446(b).  Defendants' sole evidence for the delayed removal, preliminary claims spreadsheets produced in response to Defendants' discovery requests, facially do not demonstrate the "clear and certain" jurisdictional basis they must, a fact Defendants concede by failing to identify a single claim providing such evidence in their Removal Notice.  Sheridan also produced the preliminary claims spreadsheets, not in isolation as Defendants' removal infers, but as a part of a series of related discovery responses. The *complete* set of Sheridan's discovery responses, of which Defendants also fail to inform the Court, together with the unambiguous allegations of Sheridan's state law Complaint, provide clear and certain evidence that Sheridan's "rate of payment" action does not implicate federal court subject matter jurisdiction.

Defendants further fail to inform the Court that Sheridan produced the preliminary claims spreadsheets in response to, among other discovery requests, an interrogatory seeking *both* 1) the amounts sought by Sheridan "in this Lawsuit" *and*  2) "any other amount" Sheridan contends is owed by Aetna, thus demonstrating that Defendants' delayed removal is nothing more than a flawed "gotcha" attempt to "discover" a potential "right to payment" dispute in the thousands of line items of individual underpaid claims on Sheridan's preliminary claims spreadsheet. Because Defendants fail to meet, and cannot meet, the requisite burden for removal at this late stage, and have conceded that its state law provider "rate of payment" dispute is not otherwise subject to federal court jurisdiction, this action must be remanded, and Sheridan awarded its fees and costs.

## BACKGROUND

On May 29, 2015, over six months ago, Sheridan filed this state law action ("Complaint") against Aetna and its affiliates ("Defendants" or "Aetna") for breaches of contract resulting from Defendants' failures to pay Sheridan the appropriate "rate of payment" for medically necessary, covered health care services.  Defendants initially, and correctly, did not seek removal because, as well-settled law confirms, Sheridan's asserted state law contract claims did not, and still do not, implicate federal subject matter jurisdiction.

As pled, and as confirmed by the sworn pre-removal discovery responses conveniently and conspicuously not disclosed in Defendants' Notice, Sheridan's asserted claims concern only the rate of payment owed by Defendants.  Sheridan seeks no recovery against Aetna for denied care, coverage disputes or benefit denials and specifically excludes from its state court action any issues involving these "right to payment" disputes.  Binding Eleventh Circuit precedent holds that such provider contract claims are neither completely nor defensively preempted by ERISA as state law disputes regarding the "rate of payment" owed to health care providers are deemed independent causes of action that neither require reference to, nor relate to, Defendants' benefit plans.  And, likewise as to FEHBA, Defendants provide no evidence of FEHBA-governed plans or claims under those plans, and willfully ignores Sheridan's express allegations excluding any causes of action arising under government-sponsored health care plans in any event.

Determined nonetheless to delay and deny Sheridan's right to choose its claims and the forum in which they are brought, Defendants embarked on a series of attempts to create a basis for removal, while simultaneously deferring if not ignoring their own discovery obligations.  On December 10, 2015, absent any accompanying proof, Defendants removed this action alleging that a cherry-picked portion of Sheridan's discovery constitutes "other papers" evidencing federal subject matter jurisdiction sufficient to justify delayed removal.  According to Defendants' Notice, those "other papers" are preliminary claims spreadsheets (containing no less than eighty-seven thousand line items produced by Sheridan in response to Defendants' broadly drafted requests) that *may* contain a limited number of individual claims that *may* implicate denied care and potentially be governed by ERISA or FEHBA. *See* Notice of Removal of Civil Action ("Removal"), D.E. 1, ¶ 4.

As described herein, such "evidence" is wholly insufficient to support removal as matter of law.  Defendants do not, and cannot, point to *any* information on the face of the spreadsheets evidencing the existence of claims for "denied care" or "coverage denials," much less the "clear and certain" proof of such information required—this despite a six-month delay, and the fact that Defendants were responsible for the processing and adjudicating of these claims, and are the best source for such alleged information.

Just as critically, Defendants' Removal failed to inform this Court that the preliminary claims spreadsheets were produced together with, and clarified by, related sworn discovery responses (provided by Sheridan before removal) that clearly state Sheridan is neither asserting

claims for, or seeking damages for "denied care."    Notably, Sheridan provided this sworn evidence in response to discovery requests directly seeking information relating solely the claims in the litigation.

As a result, Defendants' removal must be summarily rejected.  Defendants fail to meet their burden of proof to demonstrate that ERISA or FEHBA pre-emption applies to this litigation.  Defendants further have failed to demonstrate the requisite "changed circumstances" for removal at this stage, and specifically that a portion of Sheridan's preliminary discovery satisfies the unambiguous "clear and certain" requirement for "other paper" removal under 28 U.S.C. 1446(b)(3).  Finally, for the reasons described above, Sheridan is entitled to fees and costs incurred as a result of the improvident removal.

## SHERIDAN'S CLAIMS

Sheridan's Complaint unambiguously asserts state law claims against Defendants based upon a dispute over payment rates for medically necessary, covered healthcare services provided at certain times pursuant to a written Hospital Based Provider ("HBP") Agreement, and later under written Continuing Offer contractual arrangements. By example:

> Sheridan seeks damages for breaches of contract and for declaratory relief resulting from Defendants' **failures to pay Sheridan the full contractual amounts owing** for health care services rendered by Sheridan[] . . .  to Defendants' members. . . .  D.E. 1-1, Compl. ¶ 2 (emphasis added).

Sheridan's Complaint expressly <u>disclaims</u> any cause of action under government-sponsored health care plans:

> Defendants also offer **products relating to government-sponsored programs such as Medicare Advantage and managed Medicaid, which are specifically excluded from this action**. . . . D.E. 1-1, Compl. ¶ 17 (emphasis added).

Whether under the HBP agreements or Continuing Offers, Sheridan does not challenge or seek damages for "coverage disputes" or "denied care," only the <u>rates</u> at which Defendants previously (under)paid Sheridan for covered services:[1]

---

[1] Sheridan explains that the HBP agreements "set forth . . . **the method for determining the amount of fees to be paid to Sheridan**," that the HBPs "obligated [Defendants] **to pay specified rates of reimbursement** for the services provided," but that Defendants "**failed to pay Sheridan the full amount for services**. . . ." D.E. 1-1, Compl. ¶¶ 25, 26, 28 (emphasis added). This is also true under the written Continuing Offer letters as Sheridan alleges that "**Defendants have authorized and made payments, albeit in insufficient amounts contested by Sheridan, and as a result have acknowledged the services to be 'covered services'**. . . ." D.E. 1-1, Compl. ¶ 65 (emphasis added).

- 4 -

- Count I states Aetna breached the HBP contract by "**failing to pay Sheridan the full amounts owed** for Sheridan's services. . . ."  D.E. 1-1, Compl. ¶ 74(emphasis added).

- Count II states Aetna "has acknowledged responsibility for payment of the claims . . . **and has made partial payments on the claims rather than denying the claims as non-covered services.**" D.E. 1-1, Compl. ¶ 83(emphasis added).

- Count III states Coventry **has underpaid the claims at issue, not denied those claims as uncovered**. D.E. 1-1, Compl. ¶ 90 (emphasis added).

- Counts IV and V both state that Defendants "**failed to pay the reasonable value** of the benefit conferred, in this case the medical services provided, in that [Defendants] . . . **underpaid** Sheridan's claims **and reimbursed Sheridan at far below its usual and customary charges** and below the reasonable value of the services provided. . . ." D.E. 1-1, Compl. ¶¶ 97, 106 (emphasis added).

Finally, Sheridan's single count for declaratory relief is equally consistent:

- Sheridan has made written offers to Defendants . . . **specifying the fees for the respective services** . . . Sheridan is entitled to payment from Defendants **at the rates set forth in the Continuing Offers** for medical services provided to Defendants' Members. D.E. 1-1, Compl. ¶ 115 (emphasis added).

### <u>DEFENDANTS' DISCOVERY REQUESTS AND SHERIDAN'S RESPONSES</u>

Though purposefully ignored by Aetna, Sheridan confirmed the nature of its claims against Defendants in sworn discovery responses provided on November 13, 2015, well before removal.[2] Most telling, confirming its "gotcha" attempt, in Request No. 12, Defendants purposefully misquote from, and mischaracterize Sheridan's express allegations of its Complaint.[3] In this Request, Defendants ask for all documents which "support your allegation at paragraph 83 of the Complaint that Aetna has either underpaid or not paid your claims through

---

[2] *See* Plaintiff's Response to Aetna's and Coventry's First Request for Production, attached as Composite Exhibit A, and D.E. 27-5 and 27-7, Plaintiff's Notice of Serving Answers to Aetna and Coventry's First Set of Interrogatories (collectively, "Discovery Responses"). While Defendants filed Sheridan's interrogatory responses as part of record below, they did not include Sheridan's responses to Defendants' production requests, nor did they include Sheridan's discovery requests to Defendants.

[3] It appears that Defendants have wrongly attempted to analogize this case to *South Broward Hospital District v. Coventry Health and Life Insurance Co*., No. 14-61157-CIV-BLOOM, D.E. 30 (S.D. Fla. Nov. 14, 2014) (attached as Exhibit B), in which the Court denied remand where it was clear on the face of the complaint the right to payment was at issue ("An entire section of Plaintiff's Complaint is dedicated to the 'Inappropriate Denial of Claims'").  Defendants' discovery requests, removal notice, and questions about denials where none are pled, all seem to be taken directly from the Court's Order in *S. Broward Hospital Dist*.

inappropriate denial of claims." D.E. 26-2. Sheridan responded that the question was irrelevant as:

> Paragraph 83 of Sheridan's Complaint involves **only underpayments and does not assert that any claims have been denied.** Ex. A, Response to Aetna's First Request for Production, p. 12.

Each of Sheridan's discovery responses likewise provide confirmation of the nature of the claims asserted in this litigation as limited to "rate of payment" disputes and excluding government sponsored program claims. By example, Defendants' Interrogatory No. 1 requested that Sheridan identify the claims at issue in the litigation and provide data regarding those claims. Sheridan's Discovery Response noted:

> Aetna . . . has already been provided all the requisite information regarding all Medical Claims at issue in this litigation **as evidenced by prior underpayments of the claims** by Aetna . . . Sheridan is producing to Aetna spreadsheet(s) containing the available data for each of the Medical Claims **previously submitted to and underpaid by Aetna for which Sheridan is seeking damages in this lawsuit.**

D.E. 27-5, pp. 7-8.

In yet another "gotcha" attempt, Defendants' Interrogatory No. 2 requested information on both amounts sought "in this Lawsuit" as well as "**any other amount**" Sheridan contends is owed by Aetna. D.E. 26-5. In response, subject to objections, Sheridan produced to Aetna "spreadsheet(s) . . . for each of the Medical Claims previously submitted to and underpaid by Aetna for which Sheridan is seeking damages in this lawsuit." D.E. 27-5, p. 8. While Sheridan endeavored to ensure that the preliminary claims spreadsheets include the claims at issue in the litigation,[4] that this sole "other paper" evidence *may* also contain claims information for additional amounts owed by the Defendants is hardly "clear and certain" evidence that such claims are at issue in the litigation when Defendants asked for information beyond the scope of this action.

When asked, in Defendants' Interrogatory No. 3, if Sheridan alleged that any payments were untimely, Sheridan responded:

> Sheridan has not alleged any cause of action in this lawsuit predicated on Defendants' untimely payment **but, rather, on its underpayment**.

---

[4] A time consuming and complex process (made more difficult by Defendants' refusal to assist Sheridan in identifying claims data) that is, as Sheridan has previously informed Defendants, ongoing as Sheridan continues to update its preliminary claims spreadsheet as damages are quantified in discovery.

D.E. 27-5, p. 9.  When asked by Defendants why Sheridan contends it is owed "payment or additional payment," in Interrogatory No. 4, Sheridan indicated it was owed payment as a result of:

> Aetna's **failure to pay Sheridan** the negotiated and agreed-upon **reimbursement rates** under its HBP contracts(s) . . . and (2) Aetna's failure to pay Aetna **its usual and customary charges** in the absence of a pre-negotiated discount **for authorized treatment services**. . . . D.E. 27-5, pp 10-11.

Similarly, in response to Defendants' Request No. 5, seeking information regarding authorizations for treatment, Sheridan objected noting that:

> [T]he request is . . . not reasonably calculated to lead to the discovery of admissible evidence, and thus irrelevant **as the Medical Claims at issue have been previously underpaid by Aetna** and this, to the extent authorizations were required, Aetna has already determined the services were authorized.  Ex. A, Response to Aetna's First Request for Production, p. 12.

## <u>MEMORANDUM OF LAW</u>

### I.    **Legal Standards**

#### *a.    Standard for ERISA Removal*

"As a general rule, a case arises under federal law only if it is federal law that creates the cause of action." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009) (internal citations omitted).  "Complete preemption is a narrow exception to the well-pleaded complaint rule and exists where the preemptive force of a federal statute is so extraordinary that it converts an ordinary state law claim into a statutory federal claim."[5] *Id.*  The Eleventh Circuit employs the *Davila* analysis to determine if ERISA completely preempts a plaintiff's cause of action. *Id.* at 1345 (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)).

"The *Davila* test [] requires two inquiries," both of which must be satisfied for complete preemption: "(1) whether the plaintiff could have brought its claim under § 502(a)" – an inquiry which itself turns on two questions; and "(2) whether no other legal duty supports the plaintiff's claim." *Id.* The first inquiry is satisfied only if the following questions are answered in the

---

[5] The Eleventh Circuit recognizes two types of ERISA preemption: complete preemption (or "super" preemption) and defensive (or ordinary) preemption. This motion concerns only complete preemption because the latter does not provide an independent basis for federal subject-matter jurisdiction. *See Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1211 (11th Cir. 1999).

affirmative: Does "[t]he plaintiff's claim [fall] within the scope of ERISA," and does "the plaintiff [have] standing to sue under ERISA?" *Id.* at 1350. The second *Davila* inquiry is met only if the provider seeks to enforce rights arising under an ERISA plan as opposed to independent rights arising under a separate agreement between the provider and insurer. *Id.* at 1348 (citing *Blue Cross of Ca. v. Anesthesia Care. Assocs. Med. Grp. Inc.,* 187 F.3d 1045 (9th Cir. 1999)). Only if both prongs of *Davila* are met can complete preemption be found. "[I]f any element of the test is not satisfied, subject matter jurisdiction is not established. *Ghee v. Reg'l Med. Ctr. Bd.*, 1:15-CV-1430-VEH, 2015 WL 7755392, at *3 (N.D. Ala. Dec. 2, 2015).

**b.**     *Standard for Federal Officer Removal*

Pursuant to 28 U.S.C. § 1442(a)(1), known as the federal officer removal statute, removal is permitted where an action is brought against an officer of the United States for an official act performed under office. "The purpose of section 1442(a)(1) is to permit[ ] the removal of those actions commenced in state court that expose a federal official to potential civil liability . . . for an act performed ... under color of office." *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996) (internal quotations omitted). Removal under section 1442(a)(1) requires that (1) the defendant present a "colorable defense" that arises under her duty to enforce federal law, and (2) that the defendant establishes a direct connection between actions the officer has taken under her official authority and the subsequent action being brought against her. *Id.* at 1427 (internal citations and quotations omitted).

**II.     Defendants' Removal Based On "Other Papers" Is Deficient As The Preliminary Discovery Relied On Does Not Meet The "Clear And Certain" Bright-Line Removal Standard**

The removing party bears the burden of demonstrating complete preemption and where jurisdiction is not absolutely clear, the Eleventh Circuit favors remand.[6] In meeting the burden, defendants must provide facts justifying removal. *See Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1242 (11th Cir. 2001) (remanding where health insurer failed to provide proof in support of removal). Here, however, because Defendants seek late removal on the basis of "other papers" and not the initial complaint, they bear the heightened burden of unequivocally

---

[6] *Oskars, Inc. v. Bennett & Co., Inc.*, 132 F. Supp. 1333, 1334 (M.D. Ala. 2001) (granting remand because plan not governed by ERISA) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)); *Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir. 2003) (removal statutes should be construed narrowly, and all doubts resolved in favor of remand).

proving that "the case 'has become removable' due to changed circumstances." *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 760 (11th Cir. 2010) (citing 28 U.S.C. § 1446(b)).

> Under the second paragraph, a case becomes removable when three conditions are present: there must be (1) 'an amended pleading, motion, order or other paper,' which (2) the defendant must have received from the plaintiff (or from the court, if the document is an order), and from which (3) the defendant can 'first ascertain' that federal jurisdiction exists. § 1446(b). *Under either paragraph, the documents received by the defendant must contain an unambiguous statement that clearly establishes federal jurisdiction.*

*Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1215 (11th Cir. 2007) (emphasis supplied). "Although the second paragraph of § 1446(b) offers an additional avenue for removal, that road is not an easy one for defendants to travel." *Pretka*, 608 F.3d at 760. Where removal is sought under the "other papers" section of section 1446(b), the information supporting removal "must be '*unequivocally clear and certain*'. . . ." *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002) (emphasis added). This "bright-line rule" is designed to promote judicial economy and reduce "protective" removals. *Id.* Requiring the "other papers" relied upon for removal to contain an express and unambiguous statement "that *clearly establishes* federal jurisdiction" is necessary to reduce "wasteful" removals. *Clark v. Wal-Mart Stores, Inc.*, 5:15CV276-MW/GRJ, 2015 WL 8491008, at *3 (N.D. Fla. Dec. 10, 2015) (internal citations and quotations omitted) (emphasis supplied).

Defendants do not and cannot meet the Court's bright-line standard. In short, Defendants argue that removal is timely under 28 U.S.C. § 1446(b)(3) because, although the initial deadline has long passed, Sheridan's action "became" removable when Sheridan produced "other papers" in discovery in the form of four excel spreadsheets containing summary information of eighty-seven thousand line items of individual health care claims forming Sheridan's preliminary damages. D.E. 1, ¶ 3. Defendants' insufficient removal can be summarized as follows: the Defendants' analysis of Sheridan's spreadsheets purportedly shows that "*some*" unknown individual claims are for treatment under "plans governed by ERISA," that Sheridan is "challenging the denial of benefits under [those] . . . plans" and that Sheridan has taken patient assignments, thus its litigation cannot be "based on any duty independent of ERISA. . . ." D.E. 1, ¶ 4, 8 (emphasis supplied). Defendants' argument for FEHBA preemption (which ignores the fact that Sheridan's Complaint excludes claims under government-sponsored plans) is that Defendants administer "*certain* FEHBA plans" and that claims under those plans are allegedly

"at issue in this lawsuit."  D.E. 1, ¶ 9 (emphasis supplied).

It would appear that within the universe of thousands of individual claim line items that Sheridan has attempted to quantify as underpaid by Defendants in preliminary discovery,[7] that Defendants believe some unknown number *may* involve coverage denials and FEHBA plans.  If true at all—an impossible determination to make in the absence of <u>any</u> facts—this unidentified subset of claims was included in Sheridan's ongoing production being Defendants sought such information, or in error.  *See supra* "Defendants' Discovery Requests and Sheridan's Responses," pp. 5-6. And, if any such errors do exist, they are at least in part a result of Defendants refusal to respond to Sheridan's own earlier-served discovery requesting claims information to identify the basis for the payment amount. Accordingly, once identified, any such claims will be removed as Sheridan has made clear the asserted claims against Defendants concern issues of the "rate of payment" and not the "right of payment."  See Aff. of J. Marcus, at ¶¶ 4-16, attached as Exhibit C; Aff. Of J. Gehring, at ¶¶ 5, 11-14, attached as Exhibit D.  That Defendants would attempt to delay and disrupt this action by employing such a "gotcha" ploy should not be tolerated by this Court.

Quite simply, and despite Defendants' unsupported arguments to the contrary, the spreadsheets relied upon for removal do not contain <u>any</u> indication that Sheridan now seeks recovery for denied healthcare under ERISA or FEHBA plans, which is the entire basis for alleged federal jurisdiction of pure state law claims.[8]  As such, they do not and cannot meet the heighted standard and bright-line rule imposed by federal courts which requires that "other papers" relied upon for late removal contain express and unambiguous statements "that *clearly establish[]* federal jurisdiction. . . ."  *Clark*, 2015 WL 8491008, at *3.  This alone requires remand.  What is more, if the Court were to somehow ignore the lack of <u>any</u> express jurisdictional statements within Sheridan's "other paper" spreadsheets despite the bright-line rule, the Court would  then need to evaluate Sheridan's discovery in its totality for such information, not simply the portion discussed by Defendants.  That analysis conclusively demonstrates that this matter must be remanded.

---

[7] Produced at Defendants' insistence despite the fact that Defendants are the parties in the best position to make such identification as the parties charged with processing and adjudicating claims and they have refused to provide such discovery.

[8] Indeed, the Defendants do not even attach the very spreadsheets they claim support removal.

As Defendants well know, but failed to inform the Court, the preliminary damages spreadsheets relied upon by Defendants as "other papers" supporting late removal were not produced alone. Rather, Sheridan also sent pre-removal written responses to Defendants' requests and interrogatory questions which are telling. Each is consistent with Sheridan's Complaint challenging only the Defendants' rates for covered services. *See supra* "Sheridan's Claims," pp 4-5; see Ex. A, at ¶ 11. Defendants cannot claim that Sheridan's spreadsheets show "unequivocally" (or, frankly, at all) that ERISA or FEHBA claims are at issue "in this Lawsuit." Put differently, Defendants may not seek broad discovery involving both health care claims at issue and not made in this action (such as Medicare and Medicaid) and then, when discovery is provided in good faith, argue it is conclusive evidence that Sheridan has changed the nature of its claims. Defendants also may not, as detailed *supra*, attempt to create a preemption issue by disingenuously issuing discovery for "inappropriate denial of claims" information when no such allegation exists in Sheridan's Complaint, and then maintain that position with this Court to bolster removal when Sheridan's discovery response confirmed (again) that its Complaint "involves *only underpayments and does not assert that any claims have been denied*."[9]

Because every response from Sheridan confirms it seeks only independent "rate of payment" state law claims and not "denied care" and is in direct conflict with the alleged "other papers" spreadsheets, it is impossible for Aetna to meet its burden to present "clear and certain" evidence to justify removal, even if the Court were to ignore the lack of any express jurisdictional evidence in Sheridan's spreadsheets. It is apparent that Defendants hoped to create an issue of denied care where none had been pled. It is equally apparent that Sheridan disclaimed any cause of action based upon denied health care before it knew Defendants would raise a jurisdictional challenge based upon this issue.

Defendants also failed to inform the Court that Sheridan served discovery on Defendants with its Complaint. Because Defendants alone decide what kind, and how much of an explanation of the adjudication of claims to provide to both the patient and the provider, Sheridan requested that Defendants provide (1) documents showing pre-authorized care provided by Sheridan; (2) copies of explanations of benefits ("EOBs") and provider remittances; and (3)

---

[9] Ex. A, Response to Aetna's First Request for Production, p. 12.

documents describing the prior payments made by Defendants to Sheridan.[10]  This information, if provided, would have been used to narrow the individual claims at issue.  Defendants, however, objected to each request and failed to provide a single responsive document.[11]

In the end, Defendants have not provided even the most basic facts in support for their jurisdictional claims, much less met the "unequivocally clear and certain" standard applied by this Court where late removal is sought on the basis of "other papers."  *See Pretka*, 608 F.3d at 763; *see also Bosky*, 288 F.3d at 211.  Although Defendants state that "some" claims brought by Sheridan involve ERISA or FEHBA-governed plans, Defendants do not identify a single plan subject to either.   While Defendants state that under these unidentified plans, Sheridan challenges denied health care, they fail to provide any evidence of such claims, an allegation directly contradicted by Sheridan's Complaint and other discovery responses.   Finally, Defendants argue that despite the independent contracts attached to Sheridan's Complaint, Sheridan brings its claims solely pursuant to patient assignments, another unsupported statement.

The Eleventh Circuit, in considering whether removal is proper under 28 U.S.C. § 1446(b)(3) has held that a district court is limited to the "universe of evidence available when the motion to remand is filed—i.e., the notice of removal and accompanying documents. If that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings."  *Lowery*, 483 F.3d at 1213-15.  Defendants in this case have provided only an unsupported Removal with no accompanying documents and should be barred from seeking to now cure these naked deficiencies.[12]

## III.    Sheridan's State Law Claims are not Subject to ERISA Preemption

---

[10]  See Sheridan's First Requests for Production of Documents to Defendants, attached as composite Exhibit E. As explained in its accompanying affidavit, Sheridan must depend on the "explanations" contained on provider remittances regarding the payments, or lack of payments made by Defendants.  The information provided to Sheridan is often ambiguous and insufficient.

[11]  After removal, Defendants produced very limited discovery but no claims information.

[12]  *Cf. Pretka*, 608 F.3d 744 ("Because *Lowery* was not a first paragraph removal case, anything the opinion says about the law applicable to cases removed under the first paragraph of § 1446(b) is dicta, and we are 'free to give that question fresh consideration.'").  While *Pretka* permitted the defendant's submission of post-removal evidence (if limited temporally to the time of removal), removal in this case falls squarely under *Lowery* as a "second paragraph" removal barring such evidence.

    ***a.   Sheridan's claims are not completely nor defensively preempted by ERISA.***

As observed above, Defendants' Removal is deficient on its face and fails meet the bight-line requirements of a second paragraph removal, does not support its conclusory jurisdictional allegations, and ignores facts cutting against its arguments. This has placed Sheridan in the unreasonable position of having to predict what Defendants are claiming. Further, Defendants admit that only "some" unknown portion of Sheridan's claims could possibly trigger federal jurisdiction, and Sheridan has agreed that if such claims do mistakenly exist within its preliminary discovery, they will be removed as they are plainly intended to be excluded. Finally, well-settled case law confirms that Sheridan's action is not subject to ERISA preemption.

    ***b.   Sheridan does not contest denied health care in this action, a fact made clear well <u>before</u> removal.***

The Eleventh Circuit applies a critical, outcome-determinative assessment when determining if a health care provider's claims "fall within the scope of ERISA." *Conn. State Dental*, 591 F.3d at 1350–51. Under *Davila*, the Court must distinguish between two forms of claims, those involving the "rate of payment" and those involving the "right to payment." *Id.* Because the only issue raised by Sheridan's Complaint involves the correct <u>rate of payment</u> issued by Defendants under independent contracts, the claims do not sufficiently implicate a benefit plan for complete ERISA preemption to apply. "Rate of payment" claims challenge the amount of payment for services. As Judge Cohn recently held on nearly identical facts, Sheridan's claims should be remanded because Sheridan does not seek to "'contest a denial, challenge the medical necessity of a claim, or otherwise challenge entitlement to be paid,' but rather [] 'seeks only the proper amount of payment for those claims that Defendants already authorized, already deemed covered, and already (under)paid.'" *Recovery Village at Umatilla, LLC v. Blue Cross & Blue Shield of Fla, Inc.,* No. 15-61414-CIV-COHN, D.E. 52 (S.D. Fla. Aug. 31, 2015) (attached as Exhibit F); *see also Miami Beach Cosmetic & Plastic Surgery Ctr. v. Blue Cross & Blue Shield of Fla. Inc.*, 947 F. Supp. 2d 1375, 1381–82 (S.D. Fla. 2013). In contrast, "right of payment" claims challenge the denial of payment altogether, often because the insurer deemed the services not medically necessary. *Id.*

    Here, as detailed *supra*, pp. 4-5, Sheridan's claims concern **only** the **rate of payment** Defendants were obligated to pay for authorized, covered services. Because the claims at issue dispute only the appropriateness of the <u>payments actually made by Defendants</u>, and not any

payment denials for alleged non-covered benefits, the claims do not fall within the scope of ERISA. *See Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 532 (5th Cir. 2009) ("Again, where claims do not involve coverage determinations, *but have already been deemed 'payable,'* and the only remaining issue is whether they were paid at the proper contractual rate, ERISA preemption does not apply.") (emphasis added); *cf. Gables Ins. Recovery v. United Healthcare Ins. Co.,* 39 F. Supp. 3d 1377, 1384 (S.D. Fla. 2013) ("The distinction between rate of payment and right to payment, therefore, is whether the claims are payable at all.").

As Defendants admit by failing to seek removal within 30 days of filing of this action, Sheridan's Complaint concerns only the "rate of payment" of claims, and under *Davila* is not pre-empted. Instead, Defendants argue that they have now identified certain denials of health care under unknown ERISA plans within a portion of Sheridan's discovery, thus "converting" this action into one under ERISA. D.E. 1, ¶ 4.  Although Defendants notably fail to identify the relevant denials, even if they had, Sheridan is not seeking damages based on denials of care under ERISA (or FEHBA) plans and, as explained, will remove any such claims identified from its final damages.  Thus, even if such claims were mistakenly included within the thousands of underpaid claims at issue, this does not and cannot change the nature of Sheridan's relief.  See Ex. C, at ¶¶ 4-15; Ex. D, at ¶¶ 5, 11-14.[13]  Sheridan, as the master of its complaint, had the right to choose which claims it brings and that choice may not be usurped by Defendants. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 387 (1987).

   ***c. Sheridan does not bring claims against Defendants based upon the existence of patient assignments.***

Defendants also claim, at odds with settled law, that as a health care provider and not a direct beneficiary, Sheridan's only entitlement to payment requires an assignment of benefits. Thus its litigation must implicate ERISA, D.E. 1, ¶ 8.  First, if Defendants' argument that the mere existence of patient assignments by a provider is sufficient to find complete ERISA preemption were correct, which it is not, removal on this basis is untimely and requires remand. *See BCC Apartments, Ltd.*, 994 F. Supp. at 1442 (under 28 U.S.C. § 1446 removal must be filed within thirty days of the basis for jurisdiction, a strictly construed requirement).  That Sheridan is (1) a health care provider not a plan beneficiary, and (2) has submitted claims on behalf of

---

[13] As indicated, upon identification of such claims, Sheridan will remove them in its next round of discovery, which will include updated damages spreadsheets.

Defendants' members, is not "new" information Defendants gleaned from the filing of "other papers" but a fact that has existed from the start of this litigation.

Second, Defendants' position is factually unsupported by the "other papers" relied upon and at odds with Eleventh Circuit precedent that permits a provider to assert independent state law claims irrelevant of assignments. Here, Sheridan has not brought any claim as an assignee of any ERISA plan beneficiary or participant. *See Guerriere v. Aetna Health Inc.,* 807-CV-1439-T-23TBM, 2007 WL 3334346, at *2 (M.D. Fla. 2007) (granting plaintiff's motion to remand because "the plaintiff is not suing to enforce rights under the assignment," "[t]he complaint omits mention of an assignment, and the plaintiff needs no assignment to state a claim against Aetna"). Rather, Sheridan is asserting independent contractual breaches of HBP agreements and its Continuing Offers, claims that Sheridan's patients could not assert as they are not parties to these independent contracts. *See Anesthesia Care Associates Med. Group, Inc.*, 187 F.3d at 1051 ("Here, in contrast, the Providers and Blue Cross have executed provider agreements, and it is the terms of the provider agreements that Providers contend Blue Cross has breached.").

A healthcare provider only has standing to sue under an ERISA plan where the provider asserts claims directly based upon an assignment, and thus affirmatively stands in the shoes of a plan beneficiary. *Conn. State Dental*, 591 F.3d at 1347; *Rocky Mountain Holdings, LLC v. Blue Cross & Blue Shield of Florida, Inc.*, 2008 WL 3833236, at *4 (M.D. Fla. Aug. 11, 2008). Simply because a health care provider may have an assignment of benefits does not merit ERISA preemption where the provider asserts an independent state law claim rather than a claim as an assignee.[14] Sheridan's claims are entirety based upon independent state law claims and do not rest upon assignments. Accordingly, Defendants' arguments should be rejected and the case remanded to state court.

---

[14] Defendants' assertion that unknown claims within Sheridan's discovery show the existence of patient assignments, even if true, is irrelevant. *See Rocky Mountain Holdings,* 2008 WL 3833236, at *4 (granting motion to remand despite defendants' presentation of "a sample of twenty claim forms which indicate[d] that [] an existing 'signature on file' assigns the patient's medical benefits to one of the Plaintiffs" because the plaintiffs were not attempting to stand in the shoes of the patients, and their claims were unrelated to the rights of the patients). Defendants' citation to *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296, 1304 (11th Cir. 2010) is likewise misplaced, as the claims there involved "wrongfully denied benefits based on determinations of medical necessity–relat[ing] directly to the coverage afforded by the ERISA plans."

> **d.  *Sheridan's action involves and requires interpretation of independent contracts and associated legal duties, not underlying health care plans.***

Even assuming *arguendo* that Defendants could factually and legally support their arguments for the existence of ERISA plans and assignments—something they failed to do and something the "other papers" relied upon do not support—and <u>then</u> also show that such claims are actually a part of Sheridan's action despite the clear language of its Complaint, they still would fail to meet the Eleventh Circuit's test for complete preemption.  The second prong of *Davila* requires the Court to ask if Sheridan seeks to enforce rights under an ERISA plan or under independent agreements with the Defendants.  *See Conn. State Dental Ass'n*, 591 F.3d at 1348.  If the latter, as is the case here, *Davila* is not satisfied and subject matter jurisdiction is not established.  *Ghee*, 2015 WL 7755392, at *3.

In this litigation, Sheridan has brought claims for breaches of contract and declaratory relief arising under independent contractual agreements with the Defendants, first under written HBP agreements and later, under written Continuing Offer letters; agreements that do not involve ERISA benefit plans. *See* D.E. 1-1, Compl. ¶ 3.   Rather, Sheridan's breach of contract claims merely require examination of the written HBP contracts, whether the elements of contract formation exist, and whether those contracts were breached. *See Federico v. Excelsior Benefits, LLC*, 8:13-CV-3162-T-33, 2014 WL 2600110, at *4 (M.D. Fla. June 10, 2014) ("Under Florida law, to adequately state a claim for breach of contract, a plaintiff must establish: (1) a valid contract; (2) a material breach; and (3) damages.").

Similarly, resolution of Sheridan's implied-in-fact and implied-in-law contract claims under its Continuing Offers also do not rest upon the interpretation of an ERISA plan nor any assignment of a participant's rights under an ERISA plan.[15] These claims require only a finding that Sheridan's Continuing Offers constituted valid contractual offers that were accepted by Defendants' conduct, and that the Defendants then failed to pay the contract price or, in the alternative, that an obligation was created under which Defendants received a benefit that requires compensation.  *See Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 385 (Fla. 4th DCA 1997) (en banc). Sheridan's implied-in-fact and implied-in-law contract claims arise out of an independent duty created by law rather than the terms, or

---

[15] The same ERISA preemption analysis applies to implied-in-fact contract claims. *UPMC Presby Shadyside v. Whirley Industries, Inc.*, No. 1:05-CV-68, 2005 WL 2335337, *6 n.2 (W.D. Pa. 2005).

existence, of any benefit plan.  *Id.* at 386.[16]

Moreover, the preemptive scope of ERISA is not limitless and where state law causes of action make no reference to and function irrespective of ERISA, they will not be preempted.  *See Hiller v. Wachovia Corp.*, No. 08-81253-CIV, 2008 WL 4938424, at *1 (S.D. Fla. Nov. 18, 2008).   As the Eleventh Circuit has observed, the mere existence of an ERISA plan is not sufficient to find preemption.  *Id.*  (quoting *Forbus v. Sears Roebuck & Co.,* 30 F.3d 1402, 1405 (11th Cir.1994)).  Sheridan's action is predicated on the existence of independent contracts with Defendants and the alleged breaches of those contracts.  ERISA was not enacted to "enforce the general principle that [contractual] promises ought to be kept."  *Id.*

## IV.    The Federal Officer Removal Statute Does Not Apply To Sheridan's Claims

Finally, as an independent (but equally misplaced) basis for federal jurisdiction, Defendants argue that the Federal Officer Removal Statute, 28 U.S.C. § 1442, warrants removal as Sheridan's discovery spreadsheets allegedly show that it seeks benefits under certain FEHBA plans.   Specifically, Defendants claim that they administer "certain FEHBA plans whose members' . . . benefit claims are *at issue in this lawsuit.*"[17]  D.E. 1, ¶ 9 (emphasis supplied). First, Sheridan is not seeking benefits under any type of plan.  Second, Defendants have never identified the existence of a single FEHBA plan or product as part of its former contracts with Sheridan or as part of their Removal.   Third, Defendants have failed to identify any claims sought by Sheridan that implicate these unknown plans.  Defendants also neglect to inform the Court that, to the extent that Aetna administers some FEHBA plans as government sponsored plans so that the Federal Officer Removal statute is implicated, and may be included in Sheridan's preliminary spreadsheets, that Sheridan has expressly carved out any claims arising under government-sponsored health care plans, a fact that fatally undermines Defendants' position.

---

[16] Sheridan's claim for declaratory relief is also not subject to complete preemption. In its claim, Sheridan seeks a determination as to rights and obligations under contractual agreements formed between Sheridan and Defendants. Accordingly, Sheridan's independent state law claims are based on breaches of independent contracts and do not seek to enforce coverage rights under ERISA plans. As such, Sheridan's state law claims are not preempted.

[17] Defendants also cite 5 U.S.C  § 8902(m)(1), the FEHBA preemption statute, that observes that where the terms of a FEHBA contract are placed at issue by a challenge to coverage or benefits, the terms of the contact will supersede state law.  Sheridan's action does not challenge coverage or benefits under any FEHBA or government insurance contract.

To illustrate, under "General Allegations," Sheridan discusses the Defendants' commercial "traditional insurance products such as indemnity plans and PPO products, and prepaid health care plans such as HMOs." D.E. 1-1, ¶ 16.   In the paragraph immediately following, Sheridan's Complaint distinguishes those products from government-sponsored health care plans that are not at issue in this litigation:

> Defendants also offer *products relating to government-sponsored programs* such as Medicare Advantage and managed Medicaid, *which are specifically excluded from this action*. . . .

D.E. 1-1, ¶ 17 (emphasis added).   Given that Sheridan has clearly excluded any claims relating to government-sponsored health care, Defendants' assertion that 28 U.S.C. § 1442 or 5 U.S.C § 8902(m)(1) compels removal must be rejected.

Further, though it is unnecessary for the Court to consider the Federal Officer Removal case law cited by Defendants for the reasons discussed, that case law is entirely inapposite. Defendants first reference *Anesthesiology Associates of Tallahassee, Florida, P.A. v. Blue Cross Blue Shield of Florida, Inc.*, 03-15664, 2005 WL 6717869 (11th Cir. 2005), an unpublished nonbinding  Eleventh Circuit decision finding § 1442 preemption where a provider sued Blue Cross for lack of payment.[18]   Unlike this litigation, in *Anesthesiology Associates* the plaintiff (1) brought claims under Medicare plans, (2) expressly alleged patient assignments and sued for benefits under them, and (3) alleged that BCBS entirely failed to pay for its services.   As the court observed, the provider's "suit is based on BCBS's failure to reimburse it for services allegedly covered by the plans." *Id.* at *2.   And, unlike here, the plaintiff challenged express provisions within Medicare plans.[19]   *Id.*   In *Peterson v. Blue Cross/Blue Shield of Texas,* 508

---

[18] The validity of *Anesthesiology Associates* has been questioned with federal courts noting that "there is a split of authority on the question of section 1442(a)(1)'s application to a FEHBA provider. . . ." *See Orthopedic Specialists of New Jersey PA v. Horizon Blue Cross/Blue Shield of New Jersey*, 518 F. Supp. 2d 128, 133 (D.N.J. 2007).   *Orthopedic Specialists* observes that both cases relied upon by Defendants "concern[] the *provision of Medicare benefits, an area in which direct federal control is far more substantial than under FEHBA.*" *Id.* at 136 (emphasis supplied).   The distinction between FEHBA and Medicare plans are of "central importance in assessing whether the Defendant's action was taken under the 'direct and detailed control' of a government agency or officer." *Id.* Thus, even if Sheridan were bringing FEHBA-based claims, which it is not, whether the Federal Officer Removal statute could confer jurisdiction is far from clear.

[19] At issue was whether benefits payments could be made directly to patients vs. to the provider, a question answered in the express terms of the federal health plans.

F.2d 55 (5th Cir. 1975), another case cited by Defendants, a physician brought suit for tort damages based on his suspension from the Medicare program by Medicare administrators. *Id.* at 56. The Fifth Circuit concluded that the actions of the Medicare administrators were taken as part of their official duties and within the scope of their employment. As such, the litigation was properly removed under Section 1442(a)(1).

No facts similar to *Anesthesiology Associates* or *Peterson* exist here. Sheridan has excluded Medicare and FEHBA plans from its litigation, has not brought "right to payment" claims under such government plans, does not challenge the actions of Defendants with respect to their administration of any Medicare, Medicaid, or FEHBA plan, and only litigates the rates Defendants have underpaid Sheridan under independent contracts that do not require reference to plan terms, FEHBA or otherwise.

## V.      Sheridan Is Entitled To Recover Attorneys' Fees And Costs

Sheridan is entitled to an award of attorneys' fees and costs in connection with this remand motion. *See Hobbs*, 276 F.3d at 1243 ("An order remanding a case to state court 'may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal.") (quoting 28 U.S.C. § 1447(c)). The purpose of fee awards under § 1447(c) is to "deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Thus, courts may award fees and costs "where the removing party lacked an objectively reasonable basis for seeking removal."[20] *Id.* Defendants lacked an objectively reasonable basis for seeking removal of this lawsuit as "[c]ourts have, with near unanimity, found that independent state law claims of third party healthcare providers are not preempted by ERISA." *Rocky Mountain Holdings*, 2008 WL 3833236, at *2 (citations omitted).

Defendants, in favor of their tactic to delay this litigation and impose unnecessary costs on Sheridan, nonetheless, chose to ignore governing law, and remove this case without providing any factual basis to support that removal.[21] Moreover, fees are particularly warranted given

---

[20] "[A]n award of fees under § 1447(c) does not require a showing that the defendant's position was 'frivolous, unreasonable, or without foundation.'" *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 890 (11th Cir. 2011) (quoting *Martin*, 546 U.S. at 138).

[21] Defendants did so on the eve of a re-scheduled hearing in the Broward County Complex Business Division the following day, and in the midst of belatedly agreeing to produce some unknown discovery in the state court action.

Defendants' recalcitrance in ignoring Sheridan's repeated pre and post remand written representations that it does not seek damages for denied care or under FEHBA plans—the only possible basis for the partial preemption of this action. Sheridan should therefore be awarded the attorneys' fees and costs incurred as a result of Defendants' improper attempt to remove this lawsuit to federal court. *See, e.g.*, *S. Fla. Ear, Nose & Throat, PLLC v. Blue Cross & Blue Shield of Fla., Inc.*, No. 2:13-CV-178-FTM-29, 2013 WL 6332968, at *4 (M.D. Fla. Dec. 5, 2013) (awarding attorneys' fees and costs because "defendant attempted to transform a simple breach of contract claim valued at $1,045.56 into a complex ERISA case without an objectively reasonable basis").

## CONCLUSION

Defendants are well aware that Sheridan's Complaint does not trigger federal jurisdiction and deliberately use only selected portions of preliminary discovery to mischaracterize Sheridan's claims in an effort to delay this litigation, while failing to support their jurisdictional arguments with any proof. Just as plaintiffs are prohibited from using "artful pleading" to avoid federal jurisdiction where such jurisdiction is proper, so too Defendants must not be allowed to manufacture "gotcha" jurisdiction in an effort to recast Sheridan's Complaint into one involving ERISA or FEHBA-governed claims where none are pled or sought. This is exactly the reason the Eleventh Circuit has adopted a bright-line rule requiring "other papers" supporting a belated second paragraph removal to demonstrate the basis for federal jurisdiction clearly and unequivocally upon their face. Defendants' removal lacks any factual support and fails to meet this requirement.

Because Sheridan only seeks the appropriate "rate of payment" under independent contracts between it and Defendants and Defendants' obligation to pay is independent of any ERISA plan, and as Sheridan will be removing any alleged spreadsheet entries that involve denied care or FEHBA plans in future discovery production once identified, thus negating whatever nascent jurisdiction could exist, this Court should remand this case to the appropriate state court.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order remanding this lawsuit to the Seventeenth Judicial Circuit in and for Broward County, Florida and awarding attorneys' fees and costs, together with any further relief the Court deems just and proper.

Case No. 15-CV-62590-BLOOM/Valle

## CERTIFICATION OF GOOD FAITH EFFORT TO CONFER

Pursuant to Local Rule 7.1(a)(3), undersigned counsel certifies that she has conferred with counsel for Defendants Richard P. Hermann and Mitch A. Reid on January 4, 2016, in a good faith effort to resolve the issues raised in this motion.  Defendants' counsel has represented on behalf of all Defendants that Defendants oppose the relief requested herein.

Respectfully submitted,

ZEBERSKY PAYNE
110 Southeast 6th Street, Suite 2150
Fort Lauderdale, FL  33301
Telephone: (954) 989-6333
Facsimile:   (954) 989-7781

Todd S. Payne, Esq.
Florida Bar No. 834520
Primary Email: tpayne@zpllp.com
Secondary Email: mguerrero@zpllp.com;
soquendo@zpllp.com
*Co-Counsel for Plaintiff*

VER PLOEG & LUMPKIN, P.A.
100 S.E. Second Street, Suite 3000
Miami, FL 33131
Telephone: (305) 577-3996
Fax: (305) 577-3559

/s/ Eileen L. Parsons
**Eileen L. Parsons**
Florida Bar No. 765716
Primary: eparsons@vpl-law.com
Secondary: iromero@vpl-law.com
**Dale S. Dobuler**
Florida Bar No. 93403
Primary: ddobuler@vpl-law.com

*Counsel for Plaintiff*

Case No. 15-CV-62590-BLOOM/Valle

### CERTIFICATE OF SERVICE

I hereby certify that on January 11th, 2016, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF.   Copies of the foregoing document will be served via Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing listed on the Service List below.

ZEBERSKY PAYNE
110 Southeast 6th Street, Suite 2150
Fort Lauderdale, FL  33301
Telephone: (954) 989-6333
Facsimile:   (954) 989-7781

Todd S. Payne, Esq.
Florida Bar No. 834520
Primary Email: tpayne@zpllp.com
Secondary Email: mguerrero@zpllp.com;
soquendo@zpllp.com
*Co-Counsel for Plaintiff*

VER PLOEG & LUMPKIN, P.A.
100 S.E. Second Street, Suite 3000
Miami, FL 33131
Telephone: (305) 577-3996
Fax: (305) 577-3559

/s/ Eileen L. Parsons
**Eileen L. Parsons**
Florida Bar No. 765716
Primary: eparsons@vpl-law.com
Secondary: iromero@vpl-law.com
**Dale S. Dobuler**
Florida Bar No. 93403
Primary: ddobuler@vpl-law.com

*Counsel for Plaintiff*

Case No. 15-CV-62590-BLOOM/Valle

## SERVICE LIST

ZEBERSKY PAYNE
110 Southeast 6th Street, Suite 2150
Fort Lauderdale, FL  33301
Telephone: (954) 989-6333
Facsimile:   (954) 989-7781

Todd S. Payne, Esq.
Florida Bar No. 834520
Primary Email: tpayne@zpllp.com
Secondary Email: mguerrero@zpllp.com;
soquendo@zpllp.com

*Co-Counsel for Plaintiff*

SHAPIRO, BLASI, WASSERMAN
& HERMAN, P.A.
7777 Glades Road, Suite 400
Boca Raton, FL 33434
Tel: 561-477-7800
Fax: 561-477-7722

Richard P. Hermann, II, Esq.
Florida Bar No. 110019
rhermann@sbwlawfirm.com
floridaservice@sbwlawfirm.com
David J. DePiano, Esq.
Florida Bar No. 55699
ddepiano@sbwlawfirm.com
nlewis@sbwlawfirm.com

*Counsel for Defendants*

Mitch A. Reid, Esq. (*Admitted Pro Hac Vice*)
Andrews Kurth LLP
600 Travis, Suite 4200
Houston, TX 77002
Tel: 713-220-4200
Fax: 713-220-4285
mitchreid@andrewkurth.com

*Co-Counsel for Defendants*