EXHIBIT D

**EXHIBIT D**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-CV-62590-BLOOM/Valle

SHERIDAN HEALTHCORP, INC., a
Florida corporation,

    Plaintiff,

vs.

AETNA HEALTH INC., a Florida Corporation,
AETNA LIFE INSURANCE CO., a Connecticut
corporation, COVENTRY HEALTH AND LIFE
INSURANCE COMPANY, a Missouri
Corporation, COVENTRY HEALTH CARE OF
FLORIDA, INC., a Florida corporation,
COVENTRY HEALTH PLAN OF FLORIDA,
INC., a Florida corporation, and FIRST HEALTH
LIFE AND HEALTH INSURANCE COMPANY,
a Texas corporation,

    Defendants.
_____/

## AFFIDAVIT OF JANET GEHRING IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND

STATE OF FLORIDA    )
                             ) ss:
COUNTY OF BROWARD    )

    1.    My name is Janet Gehring, I am over the age of 18 and have personal knowledge of all matters set forth in this Affidavit.

    2.    I am employed by Sheridan Healthcorp, Inc. ("Sheridan"), the Plaintiff in this action. I have been employed by Sheridan since 1992. Presently, I am Sheridan's Senior Vice President, Revenue Cycle Management.

3. On May 29, 2015, Sheridan filed suit against Aetna Health, Inc., Aetna Life Insurance Company, Coventry Health and Life Insurance Company, Coventry Heath Care of Florida, Coventry Heath Plan of Florida, Inc., and First Health Life and Health Insurance Company (collectively, "Defendants").

4. Sheridan sues Defendants for underpaying Sheridan the full contractual amounts owed for covered health care services provided to Defendants' members under a written Hospital Based Physician Agreement with Aetna, under a subsequent series of independent contracts based on Sheridan's written continuing offers to Defendants.

5. Sheridan's lawsuit against the Defendants does not include claims for health care services provided to members of government-sponsored health care plans, for example, Medicare and Medicaid, and does not seek payment for any denied care, for instance, denials based on lack of medical necessity or other coverage issues such as eligibility issues. For the claims at issue, the "right to payment" is not at issue but only the appropriate "rate of payment."

6. My job responsibilities at Sheridan involve the oversight of the Revenue Cycle Management ("RCM") department. The RCM department is responsible for the processing and submission of health care claims to payers such as those submitted to Defendants at issue in this lawsuit. In my experience, the processing and payment of claims by payers is an on-going process that can take months, and during that time the status of claims including payments may change often. I have been in this role primarily for the last 4 years, and for the entire period for which Sheridan is seeking damages in this litigation.

244457_1

7. As part of my job responsibilities, I am directly and personally involved in identifying and quantifying the amounts owed to Sheridan in this litigation in the form of underpaid heath care claims.

8. Sheridan like all providers must rely on health plans and insurers or their agents and vendors to process and pay submitted claims. Sheridan like all providers must depend on the information provided by the payer regarding the adjudication or disposition of the claim, including the payment amount and any remarks or explanations regarding the manner or basis for the payment or processing of the claim. Often the explanation for the adjudication of the claim, including payment amount is provided in generic remark codes, is ambiguous, insufficient or wholly lacking transparency and provides little substantive information to assist the provider.

9. It is my understanding that Defendants, who are in the best position to identify the claims themselves, requested Sheridan identify the specific individual claims at issue in the litigation as well as all other amounts owed to Sheridan by Defendants. I participated in the investigation and preparation of the discovery in response to Defendants' requests, including Sheridan's good faith effort to prepare a claims spreadsheet based on available information regarding the claims for which Defendants have underpaid Sheridan.

10. Based on available information, Sheridan has included those claims in its first set of preliminary claims spreadsheets provided to Defendants and continues to research and update its information in this regard. Because Defendants did not limit their requests to those claims only, and at times Defendants' basis for the underpayments are insufficient, the preliminary claims spreadsheets may contain additional claims information, or errors.

244457_1

3

11. Sheridan has attempted to sample the claims spreadsheet in an attempt to locate "denied care" or FEHBA claims and has been unable to do so. Sheridan is not seeking a determination of coverage issues or denied care in this "rate of payment" action, or claims for government-sponsored programs, and will remove identified claims from its spreadsheets which, as indicated in its discovery responses, it has agreed to continuously revise and update as discovery proceeds.

12. It should be noted as well that Sheridan's spreadsheets may include individual line item claims that, for one reason or another, reflect no payment. This does not mean however that the claim was denied based on lack of coverage or medical necessity. In some cases for instance, the claims are relatively recent and have not been fully processed by Defendants, and in other cases, these zero payments may reflect payment processing issues or lack of payment based on "payment policy" disputes.

13. In other instances, claims continue to be processed, and information regarding those claims will need to be updated. Still in other instances, the preliminary claims spreadsheets may simply contain errors.

14. Sheridan's compliance standard is a 95% or above accuracy rate in the tracking and processing of its health care claims. Given the sheer volume of claims submitted by Sheridan to Defendants and the breadth of Defendants' discovery requests regarding Sheridan's claims, it is not unreasonable to expect that Sheridan may have inadvertently included certain claims on its produced spreadsheets that involve denials of coverage or claims involving government-sponsored health care; however, Sheridan's Complaint and subsequent discovery

244457_1

Case No. 15-CV-62590-BLOOM/Valle

responses confirm that it is not seeking damages for claims that were denied for coverage reasons. Rather, Sheridan's causes of action and damages are based solely upon Defendants underpayment of authorized treatment services, whether under the HBPs or Sheridan's Continuing Offer(s).

FURTHER AFFIANT SAYETH NAUGHT.

_____
JANET GEHRING

STATE OF FLORIDA    )
                    ) ss:
COUNTY OF BROWARD   )

BEFORE ME, the undersigned authority, personally appeared JANET GEHRING, who, being first duly sworn according to law, deposes and says that she executed the foregoing Affidavit and that the representations therein are true and correct to the best of her knowledge and belief.

SWORN TO and SUBSCRIBED TO before me on this 11th day of January, 2016.

Individual Personally Known ✓
OR
Individual Produced Identification _____
Type and Number of Identification Produced _____

My Commission Expires:

_____
NOTARY PUBLIC
State of Florida at Large


ANASTASIA L. SANTARONE
MY COMMISSION # FF 160181
EXPIRES: January 12, 2019
Bonded Thru Budget Notary Services

244457_1