**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | | |
|---|---|---|
| SHERIDAN HEALTHCORP, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| AETNA HEALTH INC., AETNA LIFE | § | |
| INSURANCE COMPANY, COVENTRY | § | CIVIL ACTION NO. 15-CV-62590 |
| HEALTH AND LIFE | § | |
| INSURANCE COMPANY, | § | |
| COVENTRY HEALTH CARE OF | § | |
| FLORIDA, INC., COVENTRY | § | |
| HEALTH PLAN OF FLORIDA, INC., | § | |
| and FIRST HEALTH LIFE AND | § | |
| HEALTH INSURANCE COMPANY, | § | |
| | § | |
| Defendants. | § | |

---

**DEFENDANTS' RESPONSE AND MEMORANDUM OF LAW**
**TO PLAINTIFF'S MOTION FOR REMAND**

---

HOU:3626980.1

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................ 1

II.     ISSUE TO BE RULED UPON ........................................................................................ 2

III.    JURISDICTIONAL FACTS ............................................................................................ 2

    A.      Sheridan Attempted To Artfully Plead Around Preemption By
        Suing Defendants For Alleged "Underpayments" Arising Out
        Of Unidentified Medical Claims ........................................................................... 2

    B.      Defendants Timely Removed The Case When Sheridan First Identified
        Denied Medical Claims Pursuant To ERISA And FEHBA Plans. ........................ 3

    C.      Five Representative Patients At Issue Show That Sheridan Received
        Assignments Of Benefits From Members Who Were Covered Under
        ERISA Or FEHBA Plans. ..................................................................................... 4

IV.    ARGUMENT AND AUTHORITIES ............................................................................. 5

    A.      Removal Is Proper Under 28 U.S.C. § 1446(b)(3). .............................................. 5

        1.      Removal Is Timely. .................................................................................. 6

        2.      Defendants' Removal Meets The "Clear And Certain" Standard. ............. 7

    B.      Claims Falling Within The Scope Of ERISA § 502(a) Are Federal
        In Character—No Matter How Pleaded—Thus, Are Completely
        Preempted. ............................................................................................................ 8

        1.      ERISA Plans Exist And Sheridan Seeks ERISA Plan Benefits
            From Defendants. .................................................................................... 8

        2.      ERISA complete preemption is an exception to the well-pleaded
            complaint rule and provides a basis for removal to federal court. ............ 9

        3.      Davila sets forth the test for complete preemption under ERISA. ........... 10

            a.      Sheridan's claims meet the first prong of Davila because
                they could have been brought under ERISA § 502(a). ................. 10

            b.      Sheridan's claims meet the second prong of Davila
                because they are not "based on a legal duty entirely
                independent of ERISA or the Plan's terms." ................................ 13

    C.      The Federal Officer Removal Statute Applies To Sheridan's Claims. ................. 14

       *1.*    *Aetna acts under the direction of a federal officer when providing administrative services for the FEHBA claims.* ........................................ 14

       *2.*    *There is a "causal nexus" between Sheridan's claims and Aetna's actions.* ........................................................................................ 15

       *3.*    *Express FEHBA preemption is a colorable federal defense to Sheridan's allegations.* ........................................................................ 16

   **D.**    Sheridan Cannot Nullify This Court's Jurisdiction After-The-Fact. ................... 16

   **E.**    Sheridan Is Not Entitled To An Award Of Fees And Costs. ............................... 18

**V.**    CONCLUSION AND PRAYER ...................................................................... 18

## TABLE OF AUTHORITIES

CASES

*Aetna Health Inc. v. Davila*,
   542 U.S. 200, 209 (2004) ..................................................................................9, 10, 11, 13

*Anderson v. UNUM Provident Corp.*,
   369 F.3d 1257 (11th Cir. 2004) ...................................................................................8

*Anesthesiology Assocs. of Tallahassee, Fla., P.A. v. Blue Cross Blue Shield of Fla., Inc.*
   2005 WL 6717869 (11th Cir. Mar. 18, 2005) .........................................................16

*Arizona v. Manypenny*,
   451 U.S. 232 (1981) ...................................................................................................15

*Ashcroft v. Iqbal*,
   556 U. S. 662, 668 (2009) ..........................................................................................11

*Bell v. Thornburg*,
   743 F.3d 84 (5th Cir. 2014) .......................................................................................14

*Blue Cross & Blue Shield of Fla., Inc. v. Dep't of Banking & Fin.*,
   613 F. Supp. 188 (M.D. Fla. 1985) ...........................................................................16

*Blue Cross & Blue Shield of Fla., Inc. v. Dep't of Banking & Fin.*,
   791 F.2d 1501 (11th Cir. 1986) .................................................................................16

*Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*,
   187 F.3d 1045 (9th Cir. 1999) ...................................................................................13

*Boelens v. Redman Homes, Inc.*,
   759 F.2d 504 (5th Cir. 1985) .....................................................................................17

*Borrero v. United Healthcare of N.Y.*,
   610 F.3d 1296 (11th Cir. 2010) ........................................................................ passim

*Bosky v. Kroger Tex., LP*,
   288 F.3d 208, 211 (5th Cir. 2002) ...............................................................................7

*Butero v. Royal Maccabees Life Ins.*,
   174  F.3d 1207 (11th Cir. 1999). .................................................................................9

*Carter v. Blue Cross & Blue Shield of Fla., Inc.*,
   61 F. Supp. 2d 1241 (N.D. Fla. 1999) .......................................................................16

*Chapman v. Powermatic, Inc.*,
   969 F.2d 160 (5th Cir. 1992) .......................................................................................6

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*,
   591 F.3d 1337 (11th Cir. 2009) ............................................................... passim

*Davis v. S.C.*,
   107 U.S. 597 (1883)..............................................................................15

*Devereaux v. Kroger Co.*,
   5:15-CV-233 (CAR), 2015 WL 6692245 (M.D. Ga. 2015) .........................7

*Donovan v. Dillingham*,
   688 F.2d 1367, 1373 (11th Cir. 1982) .....................................................8

*Ehlen Floor Covering, Inc. v. Lamb*,
   660 F.3d 1283 (11th Cir. 2011) ............................................................10

*Franchise Tax. Bd. v. Constr. Laborers Vacation Trust*,
   463 U.S. 1 (1983)..................................................................................9

*Giles v. NYLCare Health Plans, Inc.*,
   172 F.3d 332 (5th Cir. 1999) ..................................................................8

*Greenwald v. Palm Beach Cnty. By & Through Its Bd. of Cnty. Comm'rs*,
   796 F. Supp. 1506 (S.D. Fla. 1992) .......................................................17

*Henry v. Indep. Am. Sav. Ass'n*,
   857 F.2d 995 (5th Cir. 1988) ................................................................17

*Ingersoll-Rand Co. v. McClendon*,
   498 U.S. 133 (1990)...............................................................................1

*Innova Hosp. San Antonio, L.P. v. Humana Ins. Co.*,
   25 F. Supp. 3d 951 (W.D. Tex. 2014).......................................................7

*Isaacson v. Dow Chem. Co.*,
   517 F.3d 129 (2d Cir. 2008)..................................................................14

*Jones v. HISD*,
   979 F.2d 1004 (5th Cir. 1992) ..............................................................17

*Lambertson v. Go Fit, LLC*,
   918 F. Supp. 2d 1283 (S.D. Fla. 2013) ....................................................6

*Lone Star OB/GYN Assocs. v. Aetna Health Inc.*,
   579 F.3d 525 (5th Cir. 2009) ................................................................13

*Lowery v. Ala. Power Co.*,
   483 F.3d 1184, 1215 (11th Cir. 2007) ......................................................7

*Marley v. Elliot Turbomachinery Co.*,
    545 F. Supp. 2d 1266 (S.D. Fla. 2008) ...................................................................15

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005)...............................................................................................18

*Metro. Life Ins. Co. v. Taylor*,
    481 U.S. 58 (1987)..............................................................................................9, 10

*Mims v. Arrow Fin. Servs., LLC*,
    132 S. Ct. 740 (2012)................................................................................................2

*Muratore v. United States Office of Personnel Mgmt.*,
    222 F.3d 918 (11th Cir. 2000) .................................................................................15

*Negron v. Patel*,
    6 F.Supp.2d 366 (E.D.Pa.1998) .............................................................................16

*New Port Largo, Inc. v. Monroe Cnty.*,
    985 F.2d 1488 (11th Cir.1993) ...............................................................................16

*Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*,
    388 F.3d 393 (3d Cir. 2004).....................................................................................13

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41, 56 (1987).....................................................................................1, 9, 10

*Pretka v. Kolter City Plaza II, Inc.*,
    608 F.3d 744, 772 (11th Cir. 2010) ...........................................................................8

*S. Broward Hosp. Dist. v. Coventry Health & Life Ins. Co.*,
    No. 14–61157–CIV, 2014 WL 6387264 (S.D. Fla. Nov. 14, 2014)...........................7

*Tackitt v. Prudential Ins. Co. of Am.*,
    595 F. Supp. 887, 893-94 (N.D. Ga. 1984)..............................................................16

*Watson v. Philip Morris Cos.*,
    551 U.S. 142, 147 (2007)........................................................................................15

*Willingham v. Morgan*,
    395 U.S. 402 (1969)................................................................................................15

*Winters v. Diamond Shamrock Chem. Co.*,
    149 F.3d 387 (5th Cir.1998) ..............................................................................14, 15

*Young v. Roy's Rest.*,
    No. 6:06-cv-178-Orl-19JGG, 2006 WL 2598962 (M.D. Fla. 2006) .........................17

**STATUTES**

29 C.F.R. § 2510.3-1(j)(1)-(4) ................................................................8

5 U.S.C. § 8901-8913 ..........................................................................1

5 U.S.C. § 8902(m)(1) ........................................................................14

28 U.S.C. § 1441(b) .............................................................................9

28 U.S.C. § 1442...........................................................................2, 14

28 U.S.C. § 1446(b)(3) .....................................................................5, 8

29 U.S.C. §§ 1001-1461 ......................................................................1

29 U.S.C. § 1132(a) .............................................................................9

29 U.S.C. § 1132(a)(1)(B) ..............................................................10, 12

## REFERENCES TO THE PARTIES

| | |
|---|---|
| Defendants | Defendants Aetna Health Inc., Aetna Life Insurance Company, Coventry Health and Life Insurance Company, Coventry Health Care of Florida, Inc., Coventry Health Plan of Florida, Inc., and First Health Life and Health Insurance Company |
| Aetna | Defendants Aetna Health Inc. and Aetna Life Insurance Company |
| Coventry | Defendants Coventry Health and Life Insurance Company, Coventry Health Care of Florida, Inc., Coventry Health Plan of Florida, Inc. |
| Sheridan | Plaintiff Sheridan Healthcorp, Inc. |

## REFERENCES TO THE APPENDIX

| | |
|---|---|
| App'x | The Appendix to Defendants' Response and Memorandum of Law to Plaintiff's Motion to Remand |

## I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

Sheridan filed this lawsuit alleging various contractual and quasi-contractual causes of action against the Defendants relating to the payment of Sheridan's medical claims for treatment provided to Defendants' members.   Despite making numerous allegations regarding the purported wrongful payment of its claims, Sheridan did not identify any of the individual medical claims at issue until it was ordered to do so by the state court.   When Sheridan finally did identify the medical claims at issue, its claims list included assigned medical claims where the amounts allegedly owed by the Defendants involved (i) claims where medical benefits were denied under the terms of self-funded ERISA[1] plans, and (ii) claims where coverage determinations were made by Aetna pursuant to the Federal Employee Health Benefits Act ("FEHBA").[2]   The Defendants timely removed this case within 30 days of Sheridan's medical claims disclosure pursuant to an "other paper" removal under 28 U.S.C. § 1446(b)(3).

Sheridan now seeks to remand this case in order to forum shop.   Sheridan disingenuously asserts that this is a "rate of pay" and not a "right of payment" dispute despite its claims disclosure showing otherwise.   Alternatively, Sheridan contends it made a "mistake" or "error" in seeking damages on medical claims governed by federal law. The Supreme Court has consistently held, however, that plaintiffs cannot artfully plead their way around ERISA by characterizing their claims as something they are not.[3]   Sheridan is trying to supplant ERISA's remedies by suing Defendants to recover alleged "underpayments" on medical claims where, in fact, the ERISA-governed claims were denied for lack of coverage.   Artful pleading aside, Sheridan cannot recover *any* amounts on these claims without first overturning the ERISA coverage denials, which is the precise type of dispute the Eleventh Circuit maintains is *completely preempted by ERISA*.   *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1304 (11th Cir. 2010); *Conn. State Dental Ass'n v. Anthem Health Plans, Inc*., 591 F.3d 1337, 1351 (11th Cir. 2009).

---

[1]      The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001-1461.

[2]      Federal Employee Health Benefits Act, 5 U.S.C. §§ 8901-8913.

[3]      *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (unanimous opinion); *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 145 (1990); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987).

Additionally, and in the alternative, removal jurisdiction is also proper under the Federal Officer Removal Statute because Aetna was acting under the direction of the Office of Personnel Management ("OPM") in administering FEHBA plans, pursuant to an agreement between Aetna and OPM.[4]  Express FEHBA preemption is a colorable federal defense to Aetna's actions, and because at least one claim Sheridan is seeking damages on is based on a coverage determination pursuant to a FEHBA plan, the Defendants' removal is proper.

In short, Sheridan has sued Defendants seeking damages on medical claims that challenge Aetna's ERISA and FEHBA coverage determinations thereby providing two independent grounds for federal question removal.  This Court's subject-matter jurisdiction, properly vested, cannot be declined.[5]  Because there is federal jurisdiction here, this Court must exercise it.

## II.  ISSUE TO BE RULED UPON

This Court has federal question removal jurisdiction because ERISA completely preempts at least one of Sheridan's state law claims. Additionally, and in the alternative, this Court has federal jurisdiction pursuant to the Federal Officer Removal Statute[6] because Sheridan's claims in this lawsuit involve benefits available, if at all, under FEHBA plans.

## III.  JURISDICTIONAL FACTS

### A.   Sheridan Attempted To Artfully Plead Around Preemption By Suing Defendants For Alleged "Underpayments" Arising Out Of Unidentified Medical Claims.

Sheridan sued the Defendants in May 2015, asserting, in part, claims for breach of contract and breach of implied contract for alleged underpayments of certain medical claims Sheridan submitted to Aetna.[7]  Sheridan's Complaint did not reveal on its face that this case was removable, as it did not identify *a single medical claim* subject to its pleadings.

---

[4]     *See* Appendix at 456; 462; and 471.  Exhibits referenced in this Response are contained in the Appendix ("App'x") filed contemporaneously with the Response.

[5]     *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 747 (2012) (explaining that federal question jurisdiction granted by Congress cannot be declined by the court).

[6]     28 U.S.C. § 1442.

[7]     *See* Sheridan's Complaint For Damages and Declaratory Relief (DKT# 6-1).

-2-

**B.     Defendants Timely Removed The Case When Sheridan First Identified Denied Medical Claims Pursuant To ERISA And FEHBA Plans.**

Defendants took issue with Sheridan's failure to identify the medical claims at issue. Specifically, at a state court hearing on August 26, 2015, Defendants' successfully challenged Sheridan's motion to strike their affirmative defenses because Sheridan had provided insufficient information for Defendants to properly respond to its pleadings.[8]   The state court found Sheridan's motion premature because Sheridan had not identified the medical claims at issue.[9] The state court deferred its ruling to allow time for Sheridan to identify the specific medical claims at issue by responding to discovery within 90 days.[10]

In compliance with the state court order, Defendants propounded discovery on Sheridan seeking the identification of the "medical claims" that "form, in whole or in part, the basis of Plaintiff's legal claims against Aetna in this lawsuit." On November 13, 2015, Sheridan responded by producing, in part, four Excel spreadsheets Bates labeled SHERIDAN00001 through SHERIDAN00004 ("Sheridan's Spreadsheets") disclosing certain medical-claim information, including patient name, account number, total amount charged by Sheridan, and the amount already paid on each medical claim.[11]   Sheridan's Spreadsheets also contained specific highlighted columns showing the purported "Aetna Net Due" reflecting Sheridan's damages in this lawsuit:[12]

| Claim Creation Date | AETNA File Date | Charge ID | Billed Charges | | Aetna Net due | |
|---|---|---|---|---|---|---|
| 2/11/2015 | 2/12/2015 | 7163782 | $ | 454.00 | $ | 160.99 |
| 2/26/2015 | 2/27/2015 | 7192554 | $ | 454.00 | $ | 160.99 |
| 4/6/2015 | 4/7/2015 | 7272830 | $ | 14.00 | $ | 6.59 |

Several of the entries on Sheridan's Spreadsheets showed an expected payment (i.e., "Net Due" or "Bal Due") for treatment where coverage was denied on medical claims Sheridan submitted by assignment from ERISA-plan members.   Sheridan's Spreadsheets also revealed several

---

[8]     *See, e.g.,* App'x at 4 (noting that Sheridan had not identified "which services they are talking about…which providers they are talking about…what members they are talking about and specifically what defendants they refer to").

[9]     *Id.* at 7-8.

[10]    *Id.* at 10.

[11]    *See* App'x at 721-23.

[12]    *See* App'x at 721-23.

medical claims where Sheridan was challenging Aetna's handling of FEHBA claims under benefit plans offered by the OPM.  Accordingly, Defendants timely removed the case to this Court within 30 days of Sheridan's disclosure of its claims list when it became clear, for the first time, that Sheridan was disputing coverage determinations under both ERISA and FEHBA plans.

**C.    Five Representative Patients At Issue Show That Sheridan Received Assignments Of Benefits From Members Who Were Covered Under ERISA Or FEHBA Plans.**

Sheridan's Spreadsheets identify amounts allegedly owed by Defendants on thousands of medical claims including, but not limited to, the following medical claims denied pursuant to coverage terms of the following ERISA plans:

> **ERISA Member W176331515—Additional Information Not Received:**  Sheridan's assigned claims for radiology services provided to Member W176331515 were denied pursuant to the terms of the Comcast Plan.[13]  Under the Comcast Plan, which was a self-funded plan established and maintained for employees and eligible dependents, certain radiology services are only covered if certain information, lacking here, is received.[14] Sheridan is seeking damages on the denied radiology services.

> **ERISA Member W150506460—Experimental/Investigational Radiology Services:** Sheridan's assigned claims for radiology services provided to Member W150506460 were denied pursuant to the terms of the BOA Plan.[15]  Under the BOA Plan, which was a self-funded plan established and maintained for employees and eligible dependents, such radiology services are considered experimental or investigational for certain conditions.[16] Sheridan is seeking damages on the denied radiology services.

> **ERISA Member W076947803—Experimental/Investigational Radiology Services:** Sheridan's assigned claims for radiology services provided to Member W076947803 were denied pursuant to the terms of the Quest Plan.[17]  Under the Quest Plan, which was a self-funded plan established and maintained for employees and eligible dependents, such radiology services are considered experimental or investigational for certain conditions.[18]  Sheridan is seeking damages on the denied radiology services.

---

[13]    *See* App'x at 706.

[14]    *See* App'x at 57; 96-97.

[15]    *See* App'x at 708.

[16]    *See* App'x at 195-96.

[17]    *See* App'x at 708.

[18]    *See* App'x at 280; 283.

**ERISA Member W021153804—Neonatal Services for Dependents Not Covered:**
Sheridan's assigned claims for radiology services provided to Member W021153804 were denied pursuant to the terms of the Costco Plan.[19]   Under the Costco Plan, which was a self-funded plan established and maintained for employees and eligible dependents, neonatal services for eligible dependents, other than for Spouses or Domestic Partners, are not covered.[20]   Sheridan is seeking damages on the denied neonatal services.

Sheridan's claims information also reflects that Sheridan is seeking additional payments for services provided to FEHBA "Member 169819861:"

**FEHBA Member 169819861—Experimental/Investigational Radiology Services:**
Sheridan's assigned claims for radiology services provided to Member 169819861 were denied pursuant to the terms of the Aetna FEHBP Plan.[21]   Under the Aetna FEHBP Plan, radiology services are considered experimental or investigational for certain conditions.[22]   Sheridan is seeking damages on the denied radiology services.

Any covered medical benefits available to Member 169819861 are payable, if at all, under a FEHBA plan administered by Aetna pursuant to a contract "with the United States Office of Personnel Management, as authorized by the Federal Employees Health Benefits law."[23]   OPM's contract for Aetna's administration of FEHBA benefits is attached as Exhibit H-1, and the FEHBA plan is attached as Exhibit H-2.

## IV.  ARGUMENT AND AUTHORITIES

**A.    Removal Is Proper Under 28 U.S.C. § 1446(b)(3).**

Removal is proper under 28 U.S.C. § 1446(b)(3), which authorizes removals when "the case stated by the initial pleading is not removable," but the defendant later receives "other paper from which it may first be ascertained that the case is one which is or has become removable." The Defendants removed this case on December 10, 2015, which was within 30 days of receiving Sheridan's interrogatory responses and Sheridan's Spreadsheets.  Those discovery responses first specified that Sheridan was disputing medical claims for FEHBA plan members and claims pursuant to the terms of ERISA coverage in this lawsuit.

---

[19]      *See* App'x at 712.

[20]      *See* App'x at 399.

[21]      *See* App'x at 714-15.

[22]      *See* App'x at 684.

[23]      *See* App'x at 559.

1.      **Removal Is Timely.**

Sheridan argues that Defendants' removal was untimely because, according to Sheridan, the Defendants' claim that Sheridan's "only right to payment" stems from patient assignments which are "*ipso facto* ERISA-preempted" was "available to Defendants at the inception of the action."[24]   Sheridan's argument, however, misses the mark. To the contrary, Defendants had no way of knowing at the inception of this law suit which medical claims were at issue or whether those claims were subject to preemption by ERISA and/or FEHBA. This Court's jurisdiction rests firmly on the specific medical claims and individualized health benefits coverage actually disclosed by Sheridan in this lawsuit—not on vague or artful pleadings.

Moreover, Sheridan's timeliness argument improperly requests the Court to conduct a subjective analysis into what a particular defendant knew—which this Court has rejected in the past.[25]   "Logic dictates" that removals, like Defendants' here, based on the later receipt of an "other paper" under section 1446(b)(3), can occur "only after receipt of both the initial pleading and that 'other paper.'"[26]   Because Defendants removed this case within 30 days of receiving Sheridan's Spreadsheets identifying the claims at issue, Defendants' removal was timely and therefore proper.[27]

---

[24]     *See* Sheridan's Motion to Remand and Incorporated Memorandum of Law (DKT#36) at p. 1.

[25]     *Lambertson v. Go Fit, LLC*, 918 F. Supp. 2d 1283, 1286 (S.D. Fla. 2013) (noting the interests of "***promot[ing] certainty and judicial efficiency*** by not requiring courts to inquire into what a particular defendant may or may not subjectively know" (quoting *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992)) (emphasis added).

[26]     *Chapman*, 969 F.2d at 164; *see Lambertson*, 918 F. Supp. 2d at 1286 (S.D. Fla. 2013) (recognizing the majority rule of *Chapman*).

[27]     Sheridan's responses to discovery show that it is seeking alleged "underpayments" on a specific subset of medical claims its submitted to the Defendants between 2011 and 2015.  The total universe of medical claims that Sheridan submitted for payment during the same timeframe is significantly larger.  Until Sheridan identified the specific medical claims at issue in this lawsuit during discovery, there was no way for the Defendants to know which medical claims Sheridan was disputing based upon the pleadings in its state court Complaint.

2.       **Defendants' Removal Meets The "Clear And Certain" Standard.**

Sheridan also argues that Defendants' removal does not meet the "unequivocally clear and certain" standard justifying removal.[28]   Sheridan's argument, however, overstates the purpose and application of the standard. The purpose behind the "clear and certain" standard is to prevent defendants from removing on more "equivocal information,"[29]  but the standard ***does not*** require the "other paper" to explicitly reference jurisdiction, as Sheridan suggests.  Moreover, the specific "unequivocally clear and certain" language that Sheridan relies upon bears no relationship to the propriety of the removal. In reality, that language refers to the trigger for the 30-day time limit to remove.[30]   While the "other paper" must contain express allegations that, when considered, clearly establish federal jurisdiction, the standard does not require the document itself to actually reference jurisdiction. Not surprisingly, courts have repeatedly held that discovery documents (including spreadsheets) may properly form the basis for "other paper" removal.[31]  Here, because Sheridan's Spreadsheets clearly show denied medicals claims under ERISA plans, as well as medical claims governed by FEHBA plans, the "other paper" relied on by Defendants is sufficient for removal, despite Sheridan's legal misstatements.

Sheridan also argues that removal is improper because Defendants did not identify specific claims in its notice of removal. This argument is misplaced. The Eleventh Circuit Court of Appeals has long held that documents attached to responses to remand may be considered in

---

[28]       For support, Sheridan relies on, in part, *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002) and *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1215 (11th Cir. 2007).

[29]       *See Bosky*, 288 F.3d at 212.

[30]       *See Bosky*, 288 F.3d at 212.

[31]       *See Devereaux v. Kroger Co.*, No. 5:15-CV-233 (CAR), 2015 WL 6692245, at *1 (M.D. Ga. 2015) (finding that a spreadsheet of plaintiff's claims history that was provided to the defendant established the amount in controversy for federal jurisdiction); *see also Innova Hosp. San Antonio, L.P. v. Humana Ins. Co.*, 25 F. Supp. 3d 951, 965 (W.D. Tex. 2014) ("Since the claim details in the spreadsheets showed that at least one of the medical claims in the case involved a coverage determination…only then did the spreadsheets [make] it 'unequivocally clear and certain' that a federal question existed."); *S. Broward Hosp. Dist. v. Coventry Health & Life Ins. Co.*, No. 14–61157–CIV, 2014 WL 6387264, at **3–4 (S.D. Fla. Nov. 14, 2014) (unpublished) (finding that a claims spreadsheet served as a sufficient basis for "other paper" removal) (**Bloom, J.**).

-7-

determining whether removal is proper.[32]   Thus, because Defendants timely removed this case following Sheridan's production of its Spreadsheets identifying the ERISA and FEHBA claims discussed in Defendants' notice of removal and evidenced in this Response, Defendants' removal is proper under 28 U.S.C. § 1446(b)(3).[33]

**B.     Claims Falling Within The Scope Of ERISA § 502(a) Are Federal In Character—No Matter How Pleaded—Thus, Are Completely Preempted.**

Complete preemption provides grounds for removal jurisdiction. To establish this Court's removal jurisdiction, Defendants need only "demonstrate a substantial federal claim, *e.g., **one*** completely preempted by ERISA, and the court may not remand."[34]   The standard is easily met here.

**1.     ERISA Plans Exist And Sheridan Seeks ERISA Plan Benefits From Defendants.**

ERISA governs at least a portion of the plans at issue. A benefit plan qualifies as an ERISA plan if: (1) a Plan "exists"[35] and the Plan is (2) established or maintained (3) by an employer (4) to provide benefits (5) to participants or their beneficiaries.[36]   The plans also fall outside the "safe harbor exception" of 29 C.F.R. § 2510.3-1(j)(1)-(4) for avoiding ERISA

---

[32]     *See Pretka v. Kolter City Plaza II, Inc*., 608 F.3d 744, 772 (11th Cir. 2010) (holding that defendant carried its burden of establishing federal jurisdiction by attaching evidence to its opposition to remand).

[33]     Sheridan's assertion that these are merely "preliminary" Spreadsheets is of no consequence.  Had the Defendants waited to remove this case until after Sheridan determined its "final" claims list, Sheridan would undoubtedly argue that the removal was untimely in light of the "preliminary" claims disclosure on November 13, 2015.  Sheridan's identification of alleged "net" underpayments in its responses to discovery has removed any uncertainty as to which medical claims Sheridan is disputing in this lawsuit.   Sheridan's post-removal attempt to effectively disclaim alleged damages on FEHBA and ERISA-regulated medical claims as simple "errors"—***without identifying which claims those might be***—is nothing short of clever discovery gamesmanship in an attempt to avoid this Court's jurisdiction.

[34]     *Giles v. NYLCare Health Plans, Inc*., 172 F.3d 332, 337 (5th Cir. 1999) (emphasis added); *see also Conn. State Dental Ass'n*, 591 F.3d at 1353 ("As for the remaining claims, where removal jurisdiction exists over a completely preempted claim, the district court has jurisdiction over any claims joined with the preempted claim.").

[35]     A Plan "exists" so long as "a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982).

[36]     *See id.* at 137; *see also Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1263 (11th Cir. 2004).

regulations.[37]   The Comcast, BOA, Quest, and Costco Plans, collectively referred to herein as the "ERISA Plans," each specifically reference ERISA governance within their plan descriptions and readily qualify as ERISA plans under controlling authority.   The ERISA Plans identify the beneficiaries, the benefits, claims procedures, and the source of funding, including contributions from the employers.  Thus, the ERISA Plans providing the health benefits sought by Sheridan for Member W021153804, Member W176331515, Member W150506460, and Member W076947803 support removal.[38]

> ## 2.   ERISA complete preemption is an exception to the well-pleaded complaint rule and provides a basis for removal to federal court.

Under 28 U.S.C. § 1441(b), a defendant may remove a state court action to federal court when one of the plaintiff's claims "arises under" federal law.  An action arises under federal law when the face of the "well-pleaded complaint" raises a federal issue.[39]   The well-pleaded complaint rule is qualified, however, by the complete preemption doctrine.[40]   ERISA § 502(a)[41] is one of those provisions "with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"[42]   Indeed, ERISA § 502(a) sets forth an exclusive, comprehensive civil enforcement scheme for the administration of claims under ERISA plans, which provides the sole vehicle for claims to ERISA-plan benefits.[43]

---

[37]     *See Butero v. Royal Maccabees Life Ins. Co.*, 174  F.3d 1207, 1214 (11th Cir. 1999).

[38]     Sheridan's Spreadsheets identify several other assigned medical claims submitted for reimbursement under ERISA plans where all, or a portion, of the claim was denied for coverage reasons.  For purposes of economy, Defendants offer four sample ERISA claims at this time. Additional examples can be offered if necessary.

[39]     *Franchise Tax. Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-12 (1983).

[40]     *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987).

[41]     29 U.S.C. § 1132(a).

[42]     *Davila*, 542 U.S. at 209 (quoting *Metro. Life Ins. Co.*, 481 U.S. at 65-66); *Borrero*, 610 F.3d at 1304 ("we must evaluate each claim by its actual content").

[43]     *Pilot Life Ins. Co.*, 481 U.S. at 52-54 ("[ERISA's] civil enforcement scheme is sandwiched between two other ERISA provisions relevant to enforcement of ERISA and to the processing of a claim for benefits under an employee benefit plan. . . . Under the civil enforcement provisions of § 502(a), a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future

Both the Supreme Court of the United States and the Eleventh Circuit Court of Appeals have repeatedly held that suits seeking to enforce rights under ERISA's exclusive remedial scheme are, upon removal to federal court, *only properly litigated in federal court*—regardless of how they are pleaded in state court.[44]

### 3.      Davila sets forth the test for complete preemption under ERISA.

In *Davila*, the Supreme Court clarified the test for complete preemption under ERISA. *Davila* specifically provides that a state law cause of action falls within the scope of section 502(a) and is completely preempted by ERISA if (1) the plaintiff, at some point in time, *could have brought* the claim under section 502(a), and (2) there is no other legal duty independent of ERISA or the plan's terms that is implicated by a defendant's actions.[45]   Because Sheridan's state law claims meet this test, removal was proper.

#### a.      Sheridan's claims meet the first prong of Davila because they could have been brought under ERISA § 502(a).

The first prong of the *Davila* test is satisfied by a showing that "(1) the plaintiff's claim must fall within the scope of ERISA; and (2) the plaintiff must have standing to sue under ERISA."[46]  It is well-established that state law causes of action for improper denial of claims for ERISA plan benefits fall within the scope of section 502(a) of ERISA.[47]  Specifically, ERISA's civil enforcement scheme provides remedies for the allegedly wrongful denial of plan benefits.[48] That is exactly what Sheridan is alleging here.

It is immaterial that Sheridan has opted to "expressly disclaim" causes of action under ERISA. As the Eleventh Circuit Court of Appeals recognized in *Borrero*, even though the providers' complaints "expressly disclaim causes of action under ERISA," an analysis of "the factual allegations raise precisely the type of ERISA determinations that trigger complete

---

benefits. . . . Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." (internal citation omitted)).

[44]      *See, e.g., Davila*, 542 U.S. at 214; *Metro. Life Ins. Co.*, 481 U.S. at 65-66; *Borrero*, 610 F.3d at 1304; *Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1288 (11th Cir. 2011).

[45]      *Davila*, 542 U.S. at 210.

[46]      *Borrero*, 610 F.3d at 1303 (citing *Conn. State Dental Ass'n*, 591 F.3 at 1350).

[47]      *See Pilot Life Ins. Co.*, 481 U.S. at 56-57.

[48]      *See* 29 U.S.C. § 1132(a)(1)(B) (allowing participants and beneficiaries to seek monetary, injunctive and declaratory relief concerning their entitlement to benefits).

preemption and convert the otherwise state law claims into federal claims."[49]   An analysis of the facts here indicates that Sheridan has identified amounts owed on medical claims where any additional amounts payable, if any, necessarily challenge the denial of benefits under ERISA plans.

The Eleventh Circuit Court of Appeals reached a similar conclusion in *Connecticut State Dental Association v. Anthem Health Plans, Inc.*, where the providers insisted that they were "not seeking benefits under an ERISA plan, but instead seek to collect unpaid amounts they are owed under their Provider Agreements."[50]   In rejecting that argument, the court emphasized that "merely referring to labels affixed to claims to distinguish between preempted and non-preempted claims is not helpful because doing so 'would elevate form over substance and allow parties to evade the pre-emptive scope of ERISA.'"[51]   The court agreed that, on the face of the providers' complaint, the claims do invoke a "rate of payment" dispute ***but after looking more closely at the facts***, the court determined that "some" of the providers' claims invoked a "right of payment" dispute and "[b]ecause [the providers] complain, at least in part, about denials of benefits and other ERISA violations, their breach of contract claim implicates ERISA."[52]

Sheridan's claims are no different than the claims asserted by the providers in both *Borrero* and *Connecticut State Dental*.   Sheridan treated patients who were participants or beneficiaries of self-funded ERISA plans administered by Aetna or one of its affiliates.[53]   When Sheridan submitted its medical claims for reimbursement ***under assignments*** from Member W176331515, Member W150506460, Member W076947803, and Member 021153804, Aetna denied payment for certain services because they were not covered under the terms of the

---

[49]       *Borrero*, 610 F.3d at 1303 ("We must then resolve the inherent conflict in a factually pled but simultaneously disclaimed cause of action. [The providers'] attempt to characterize their claims as eluding the scope of ERISA itself presents a legal rather than factual conclusion. It is our function, however, to draw legal conclusions from the facts pled." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."))). The same logic should apply to Sheridan's argument regarding its express exclusion of FEHBA plans as well.

[50]       *Conn. State Dental Ass'n,* 591 F.3d at 1350.

[51]       *Id.* (citing *Davila*, 542 U.S. at 214).

[52]       *Conn. State Dental Ass'n*, 591 F.3d at 1351.

[53]       *See* App'x at 698-704.

governing ERISA benefit plans.[54]   For example, Sheridan identified a "Balance Owed" from Aetna for Member 021153804 as follows:

| ACCOUNT | CHARGES | EXPCTD | TOTAL PYMT | BAL OWED | MEMBER ID | DOS |
|---------|---------|--------|------------|----------|-----------|-----|
| 4591840 | 14,137.00 | 14,137.00 | 0.00 | 14,137.00 | W02115380403 | 07/02/2015 |

(App'x at 723)

The reason a purported "balance" is owed on this claim is not due to an incorrect "rate of pay" application as Sheridan suggests, but instead is the result of a lack of ERISA Plan coverage for the medical services provided to the member.  Specifically, the EOB sent to Sheridan shows that the ***entire unpaid portion*** of Sheridan's assigned claim was based upon an express Costco Plan ***coverage exclusion***:



(App'x at 712)[55]

The recipient of these services, Member 021153804, "could have" brought claims for the denial of benefits under the Costco Plan, similar to how Member W176331515, Member W150506460, and Member W076947803 each could have brought claims under their respective ERISA Plans.[56]   The result is no different for these Members' medical providers.[57]   Indeed, medical providers, like Sheridan, with assignments from ERISA participants or beneficiaries have

---

[54]      *See* App'x at 705-12.

[55]      The Costco Plan contains a "Specific Medical Plan Exclusion" for "Maternity benefits for Eligible Family Members other than for Spouses or Domestic Partners who are enrolled for medical plan benefits."  *See* App'x at 399.

[56]      *See* 29 U.S.C. § 1132(a)(1)(B).

[57]      *See Conn. State Dental Ass'n*, 591 F.3d at 1352-53.

-12-

standing to sue under ERISA.[58]  Sheridan, therefore, as an assignee, "could have brought" its claims under ERISA § 502(a).

> **b.      Sheridan's claims meet the second prong of Davila because they are not "based on a legal duty entirely independent of ERISA or the Plan's terms."**

The second prong of the Davila test requires that "the claims asserted [do] not implicate legal duties independent of those imposed by ERISA or an ERISA plan's terms."[59]  In both *Connecticut State Dental* and *Borrero*, the Eleventh Circuit Court of Appeals held that any complaint from an assignee-provider concerning a denial of benefits, **no matter how artfully pled**, precludes a wholly "independent duty" and thus supports removal to federal court.[60]

In *Borrero*, the court reasoned that, even though the providers' arguments that their state law claims were based "predominately" on their contracts was "true in the abstract, the Supreme Court has indicated that we must evaluate each claim by its actual content" and because "at least some of the claims pursued by [the providers] implicate legal duties dependent on the interpretation of an ERISA plan."[61]  In *Connecticut State Dental*, the court dismissed the same argument, noting that, because some (but not all) of the claims were based on denials under ERISA plans, "portions of [the providers'] claims arise solely under ERISA or ERISA plans and not from any independent legal duty."[62]

This case is no different. Sheridan's argument that this is a "rate of payment" dispute, rather than a "right of payment" dispute, is as equally unpersuasive here as the providers'

---

[58]      *Id.*

[59]      *See Borrero*, 610 F.3d at 1304 (citing *Davila*, 542 U.S. at 210).

[60]      *See Conn. State Dental Ass'n*, 591 F.3d at 1351-53; *Borrero*, 610 F.3d at 1304-05. The Eleventh Circuit adopted the reasoning of the Third, Fifth, and Ninth Circuits in establishing this "line of demarcation between ERISA and state law claims in actions brought by healthcare providers." *Conn. State Dental Ass'n*, 591 F.3d at 1347; *see also, Lone Star OB/GYN Assocs.*, 579 F.3d at 530-31 ("Aetna is correct that any determination of benefits under the terms of a plan—i.e., what is 'medically necessary' or a 'Covered Service'—does fall within ERISA," contrasted with "a dispute over whether Aetna paid the correct rate for covered services as set out in the Provider Agreement."); *see also, Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004); *Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1050 (9th Cir. 1999).

[61]      *See Borrero*, 610 F.3d at 1304-05 (citing *Davila*, 542 U.S. at 212-13).

[62]      *Conn. State Dental Ass'n*, 591 F.3d at 1353.

arguments in *Borrero* and *Connecticut State Dental*.  Because at least one claim alleged by Sheridan is "complain[ing], at least in part, about ___**denials of benefits**___," that is enough to demonstrate that a "breach of contract claim implicates ERISA" and supports removal to federal court.[63]  And, Sheridan's attempt to disclaim its assignments of benefits from the Defendants' members is both belied by the facts of this case[64] and is of no legal consequence in any event.[65]

**C.     The Federal Officer Removal Statute Applies To Sheridan's Claims.**

In addition to federal question jurisdiction under ERISA, this Court also *independently* has jurisdiction under the Federal Officer Removal Statute.[66]  The requirements for removal are satisfied when it is shown: (1) that the defendant "acted under" the direction of a federal officer; (2) that there is a "causal nexus" between the plaintiff's claims and the acts the defendant performed under the federal officer's direction; and (3) that there is a "colorable federal defense" to the plaintiff's claims.[67]  Because Aetna was acting under the color of OPM's authority in providing administrative services for the FEHBA claims, and because express FEHBA preemption is a colorable federal defense to Sheridan's allegations under 5 U.S.C. § 8902(m)(1), removal was proper.

**1.     Aetna acts under the direction of a federal officer when providing administrative services for the FEHBA claims.**

"The words 'acting under' are to be ***interpreted broadly***, and the statute as a whole must be ***liberally construed***."[68]  "Furthermore, this right [of removal under § 1442(a)(1)] is not to be

---

[63]     *Borrero*, 610 F.3d at 1304; *Conn. State Dental Ass'n*, 591 F.3d at 1351 (emphasis added).

[64]     *See* App'x at 698-704.

[65]     *See Conn. State Dental Ass'n*, 591 F.3d at 1351-53; *Borrero,* 610 F.3d at 1304-05. Additionally, Sheridan's attempt to distance itself from its patient assignments further ignores the fact that its Complaint states that Sheridan continued to provide services to the Defendants' members after its provider contracts with Aetna and Coventry terminated in March and May 2015, and it seeks damages allegedly owed on claims Sheridan submitted for payment post-termination. ***Any payments owed to Sheridan*** for medical services provided to the Defendants' members ***after the termination of the provider contracts*** would necessarily require an assignment of patient benefits for Sheridan's entitlement to payment as an out-of-network provider.

[66]     28 U.S.C. § 1442.

[67]     *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398-400 (5th Cir.1998)).

[68]     *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136 (2d Cir. 2008) (emphasis added); *see Bell v. Thornburg*, 743 F.3d 84, 89 (5th Cir. 2014) (confirming the Supreme Court's guidance "that

-14-

frustrated by a grudgingly narrow interpretation"—"one of the most important functions of this right of removal is to ***allow a federal court*** to determine the validity" of Defendants' federal defense.[69]

Aetna's provision of FEHBA benefits at the behest of OPM easily meets the first part of the "acting under" prong.  The rule has long been that private instrumentalities, such as Aetna, act pursuant to a federal officer's directions for purposes of removal whenever the private entity "lawfully assist[s]" the government "in the performance of [its] official duty."[70]  FEHBA gives OPM "the authority to administer the program by contracting with qualified private carriers," such as Aetna.[71]  Here, Aetna provided the FEHBA benefits at issue pursuant to a written contract with OPM. Under the OPM contract, Aetna was obliged to provide certain administrative tasks consistent with federal regulations, thereby assisting OPM in the performance of OPM's official duties.[72]

### 2.   There is a "causal nexus" between Sheridan's claims and Aetna's actions.

In order to establish a "causal nexus" a defendant needs only to "establish that the plaintiff's claims arise from the defendants' performance of their duties under their contract with the [federal office]."[73]  A "causal nexus" is easily established here. As previously shown by Member W169819861's EOB, Sheridan's claims for alleged "underpayments" relating to this claim stem from Aetna's coverage determination pursuant to the terms of the OPM Contract and

---

the statute be 'liberally construed'" (citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007)).

[69]     *See Winters*, 149 F.3d at 397-98 (emphasis added) ("The [federal] officer need not win his case before he can have it removed."  *Id.* at 400 (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969))); *see also Ariz. v. Manypenny*, 451 U.S. 232, 241-42 (1981) ("Historically, removal under § 1442(a)(1) and its predecessor statutes was ***meant to ensure a federal forum*** in any case where a federal official is entitled to raise a defense arising out of his official duties." (emphasis added)).

[70]     *Davis v. S.C.*, 107 U.S. 597, 600 (1883).

[71]     *Muratore v. United States Office of Personnel Mgmt.*, 222 F.3d 918, 920 (11th Cir. 2000).

[72]     *See* App'x at 456; 462; and 471.

[73]     *Marley v. Elliot Turbomachinery Co.*, 545 F. Supp. 2d 1266, 1274 (S.D. Fla. 2008) (finding that contractors established a "causal nexus" to the plaintiff's claims because the contractors' performance on a Navy ship was a part of their duties under their contract with the Navy).

-15-

the Aetna FEHBA Plan. Thus, by challenging Aetna's coverage determination under the Aetna FEHBA Plan, Sheridan's claim necessarily arises from Aetna's performance of its claims administration duties under the OPM Contract.

### 3. *Express FEHBA preemption is a colorable federal defense to Sheridan's allegations.*

Federal law, not state law, governs the interpretation of a government health insurance contract, like the one here between Aetna and OPM.[74]  Moreover, while the Eleventh Circuit has not published an opinion on the question of FEHBA preemption,[75] "the greater weight of authority is that state law claims…are preempted by § 8902(m)(1)."[76]  Because Aetna's coverage determination under the Aetna FEHBA Plan and its OPM Contract relate to health insurance or plans, Sheridan's claims are expressly preempted by FEHBA.

## D. Sheridan Cannot Nullify This Court's Jurisdiction After-The-Fact.

As a final argument to seek remand to state court, Sheridan asserts that it may have "mistakenly" interjected medical claims into this dispute that are preempted by ERISA and/or

---

[74]     *See e.g. Tackitt v. Prudential Ins. Co. of Am.*, 595 F. Supp. 887, 893-94 (N.D. Ga. 1984) (the interpretation of FEHBA plans is controlled by federal law); *see also Negron v. Patel*, 6 F. Supp. 2d 366, 370 (E.D. Pa. 1998) (breach of contract claim a "relatively easy case for preemption" because interpreting FEHBA plans under state law and differing state contract doctrines could lead to differing outcomes with regard to benefits).

[75]     While the Eleventh Circuit has not published an opinion, its unpublished opinion, *Anesthesiology Associates of Tallahassee, Fla., P.A. v. Blue Cross Blue Shield of Fla.*, *Inc.*, No. 03-15664, 2005 WL 6717869 (11th Cir. Mar. 18, 2005) (per curiam) (unpublished), still has persuasive value. *See New Port Largo, Inc. v. Monroe Cnty.*, 985 F.2d 1488, 1500 n.7 (11th Cir.1993) (Edmondson, J., concurring) ("We are not necessarily bound by the words of [earlier panel] opinions, although we may be persuaded by them even if not bound.")). In *Anesthesiology Associates*, the Eleventh Circuit stated that, "[e]ach FEHBA-covered plan is governed by a contract negotiated and interpreted by OPM, with which BCBS is compelled to comply. Any duty to pay for health services arises from the terms of the plan itself." 2005 WL 6717869, at *2. While Sheridan attempts to distinguish the factual circumstances surrounding *Anesthesiology Associates,* it is merely a factual distinction *without a legal difference*. The relation between OPM and an insurance carrier (such as Aetna) pursuant to FEHBA is the same, and, thus, the Eleventh Circuit's rationale should apply.

[76]     *Carter v. Blue Cross & Blue Shield of Fla., Inc.,* 61 F. Supp. 2d 1241, 1244 (N.D. Fla. 1999) (finding that FEHBA preempted many state law claims); *see also Blue Cross & Blue Shield of Fla., Inc. v. Dep't of Banking & Fin.*, 613 F. Supp. 188, 194 (M.D. Fla. 1985), *aff'd,* 791 F.2d 1501 (11th Cir. 1986) ("The Court finds it was the legislative intent for Section 8902(m)(1) to preempt any conflicting state law. Recent court decisions indicate that the federal government's preemptive powers are being broadly interpreted in dealing with Section 8902.").

FEHBA.[77]  Sheridan further suggests that it can nullify this Court's jurisdiction by a piecemeal removal of those medical claims from its Spreadsheets.[78]  Such discovery gamesmanship, however, is not sufficient to extinguish the existence of federal jurisdiction. It is well settled that "a plaintiff's voluntary amendment to a complaint after removal to eliminate the federal claim upon which removal was based will not defeat federal jurisdiction."[79]

In fact, this Court has held that allowing a plaintiff, such as Sheridan, to remove its federal law claims so that it can remain in state court "is contrary to binding precedent which holds that a district court's jurisdiction is not defeated when a Plaintiff voluntarily revises his Complaint, so as to eliminate the federal claim upon which removal is based."[80]  As this Court noted in *Greenwald*, the "policy behind this rule is obvious":

> When a plaintiff chooses a state forum, yet also elects to press federal claims, he runs the risk of removal. A federal forum for federal claims is certainly a defendant's right. If a state forum is more important to the plaintiff than his federal claims, he should have to make that assessment before the case is jockeyed from state court to federal court and back to state court. The jockeying is a drain on the resources of the state judiciary, the federal judiciary and the parties involved; tactical manipulation [by the] plaintiff ... cannot be condoned.[81]

Sheridan cannot forum shop by merely stating it will drop all federally-regulated medical claims from this lawsuit ***at some unknown future date*** to regain a state forum. With jurisdiction properly invoked, only this Court can determine whether Sheridan's attempted disclaimer is

---

[77]   *See* Defendants' Notice of Removal (DKT#1) at p. 10.

[78]   *Id.* (stating "once identified, any such claims will be removed.")

[79]   *Henry v. Indep. Am. Sav. Ass'n*, 857 F.2d 995, 998 (5th Cir. 1988) (citation omitted) (holding that a plaintiff's voluntary amendment to complaint after removal to eliminate federal claim upon which removal was based will not defeat federal jurisdiction); *Jones v. HISD*, 979 F.2d 1004, 1007 (5th Cir. 1992) (district court may deny remand when plaintiff's sole apparent motive in amending the complaint is to seek remand); *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507-08 (5th Cir. 1985) (holding same).

[80]   *See Greenwald v. Palm Beach Cnty., By & Through Its Bd. of Cnty. Comm'rs*, 796 F. Supp. 1506, 1507 (S.D. Fla. 1992) (internal citations omitted); *see also Young v. Roy's Rest.*, No. 6:06-cv-178-Orl-19JGG, 2006 WL 2598962, at *3 (M.D. Fla. 2006) ("This legal maneuvering has been dubbed "gamesmanship" by some courts. In addition to wasting resources, it offends Congress' intent to have the plaintiff select her forum of choice before filing her initial complaint and sacrifice federal claims at the onset of litigation if the state forum is a priority.").

[81]   *Greenwald*, 796 F. Supp. at 1507 (citing *Boelens*, 759 F.2d at 507) (internal citations omitted).

sufficient to actually remove any claims—claims which were conclusively part of the case at the time of removal pursuant to Sheridan's discovery responses. This Court's jurisdiction, properly invoked, cannot be waived. Both FEHBA and ERISA establish jurisdiction based on the claims at the time of removal, regardless of Sheridan's post-hoc attempts otherwise.

**E.      Sheridan Is Not Entitled To An Award Of Fees And Costs.**

Sheridan is not entitled to its fees and costs based on Defendants' Notice of Removal. Generally, a court may award attorneys' fees in the context of removal *only if* "the removing party lacked an objectively reasonable basis for seeking removal."[82]  Defendants' removal was clearly proper, and, in any event, certainly objectively reasonable given Sheridan's Spreadsheets, which identified claims denied for coverage under ERISA plans, as well as claims arising under FEHBA Plans.

## V.   CONCLUSION

Defendants timely and properly invoked this Court's removal jurisdiction. Therefore, pursuant to ERISA and the Federal Officer Removal Statute, the Defendants are entitled to have this Court adjudicate this dispute.

WHEREFORE, Defendants respectfully request that the Court deny Plaintiff's Motion for Remand in its entirety, and grant Defendants such other and further relief to which they may be entitled.

---

[82]      *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Respectfully submitted,

By: /s/ Richard P. Hermann

RICHARD P. HERMANN, II, ESQ
Florida Bar No. 110019
SHAPIRO, BLASI, WASSERMAN &
HERMANN, P.A.
7777 Glades Road, Suite 400
Boca Raton, Florida 33434
Telephone: (561) 477-7800
Facsimile: (561) 477-7722
E-Mail: rhermann@sbwlawfirm.com

ATTORNEY-IN-CHARGE FOR DEFENDANTS
AETNA HEALTH INC., AETNA LIFE
INSURANCE COMPANY, COVENTRY
HEALTH AND LIFE INSURANCE COMPANY,
COVENTRY HEALTH CARE OF FLORIDA,
INC., COVENTRY HEALTH PLAN OF
FLORIDA, INC., AND FIRST HEALTH LIFE
AND HEALTH INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on January 25th, 2016, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Southern District of Florida, using the electronic case filing system of the Court. I also certify that true and correct copies have also been served on the following counsel of record by email and certified mail, return receipt requested, this 25th day of January, 2016, as follows:

Todd S. Payne, Esq.
Zeberesky Payne
110 Southeast 6th Street, Suite 2150
Fourt Lauderdale, FL 33301
*tpayne@zpllp.com*
*Co-Counsel for Sheridan*

Eileen L. Parsons, Esq.
Jeremy L. Kahn, Esq.
Ver Ploeg & Lumpkin, P.A.
100 S.E. Second Street, Suite 3000
Miami, FL 33131
*eparsons@vpl-law.com*
*jkahn@vpl-law.com*
*Counsel for Sheridan*

/s/ Richard P. Hermann, II
Richard P. Hermann, II

-19-