UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-62590-BLOOM/Valle

**SHERIDAN HEALTHCORP, INC.**,

    Plaintiff,

v.

**AETNA HEALTH INC.**, *et al.*,

    Defendants.
_____/

**ORDER**

**THIS CAUSE** is before the Court upon Plaintiff's Motion to Remand, ECF No. [36] ("Motion" or "Mot."). Plaintiff originally filed this action in the Seventeenth Judicial Circuit Court of Florida, for Broward County, Florida, on May 29, 2015. The underlying complaint alleges breaches of contract resulting from Defendants' failures to pay Sheridan the appropriate "rate of payment" for covered health care services. *See generally* ECF No. [1-1] ("Complaint" or "Compl."). On December 10, 2015, Defendants filed a Notice of Removal, ECF No. [1] ("Notice of Removal"), to the District Court. The Court has carefully reviewed the record, the parties' briefs, and the applicable law. For the reasons that follow, Plaintiff's Motion to Remand is granted.

**I. Introduction**

Plaintiff Sheridan Healthcorp, Inc. ("Plaintiff" or "Sheridan"), a health care provider, asserts this action against Defendant health insurers, Aetna Health Inc. ("Aetna Health") and Aetna Life Insurance Co. ("Aetna Life") (together with Aetna Health, "Aetna"); and Coventry Health and Life Insurance Company, Coventry Health Care of Florida, Inc., Coventry Health

Plan of Florida, Inc., and First Health Life and Health Insurance Company (collectively, "Coventry," which Aetna acquired effective May 7, 2013) (Aetna and Coventry, together, "Defendants"). *See* Compl. ¶ 20. The subject controversy arises from Plaintiff's allegations that Defendants have failed to reimburse Sheridan in full for "covered services," in contravention of agreements between the parties, which obligated Defendants to pay Sheridan at the agreed rates. *Id.* ¶¶ 65-66. According to the Complaint, the parties do not contest the "right to payment" for services provided, pursuant to coverage determinations under the Federal Employee Health Benefits Act, 5 U.S.C. §§ 8901-8913 ("FEHBA"), or the Employee Retirement Income Security Act of 1974, *as amended*, 29 U.S.C. §§ 1001-1461 ("ERISA"). Rather, they contest the proper "rate of payment" pursuant to contractual obligations governing the terms of the parties' relationship. Mot. at 2. For this reason, Plaintiff argues, this dispute does not implicate any federal question that could serve as a basis for subject matter jurisdiction in federal court. Thus, Plaintiff requests that the Court remand this breach of contract action to state court.

**II. Background**

In the Complaint, Sheridan seeks both declaratory relief and damages for breaches of contract resulting from Defendants' failures to pay Sheridan the full contractual amounts owing for health care services rendered by Sheridan's employed or engaged physicians, and its allied health professionals, to Defendants' members or subscribers (hereinafter, "Members") in Florida. *Id.* ¶ 2. Specifically, Plaintiff alleges contractual breaches of three agreements: (1) the Hospital Based Physician Group Agreement by and between Aetna Health and Sheridan, dated July 15, 2005 (hereinafter, "Aetna HBP Agreement"); (2) the implied-in-fact or implied-in-law contracts for certain services provided to Aetna Members after the March 25, 2015, termination of the Aetna HBP Agreement, pursuant to Sheridan's Continuing Offer, dated November 24, 2014

("Aetna Continuing Offer"); and (3) the implied-in-fact or implied-in-law contracts for certain services provided to Coventry Members after the May 1, 2015, expiration of the Agreement by and between Coventry Health and Life Insurance Company and Sheridan, dated as of April 1, 2010 (hereinafter, "Coventry Agreement"), pursuant to Sheridan's Continuing Offer, dated November 24, 2014 ("Coventry Continuing Offer," together with the Aetna Continuing Offer, the "Continuing Offers"). *Id.* ¶ 3. As the Continuing Offers contained the "*only* terms and conditions" under which Sheridan would provide services to Defendants' Members, *id.* ¶¶ 40-41, Plaintiff contends that Defendant's acceptance of the Continuing Offers formed new contracts between the parties, under the terms provided therein. *See, e.g.*, *id.* ¶ 80 ("Since March 25, 2015, Aetna has repeatedly accepted the Continuing Offer by permitting or otherwise allowing certain of its Members to receive [s]ervices from Sheridan employed and engaged providers, and by failing to inform its Members of the terms and conditions of the Continuing Offer."). Sheridan also requests a declaration that: the amounts paid to Sheridan upon the expiration of the participating provider agreements were not reasonable; and, Sheridan is entitled to reimbursement at the fixed price set forth in the Continuing Offers for services rendered to Defendants' Members upon the acceptance of the offers by Defendants. *Id.* ¶ 4.

After Sheridan's Complaint was filed on May 29, 2015, Defendants propounded discovery to Sheridan seeking the identification of specific medical claims forming the basis of Plaintiff's claims in this lawsuit. ECF No. [3] ("Response" or "Resp.") at 3. On November 13, 2015, Sheridan responded by producing, in part, four Excel spreadsheets Bates labeled SHERIDAN00001 through SHERIDAN00004 ("Sheridan's Spreadsheets"), with 87,000 line items of claims. These claims disclosed certain medical-claim information, including patient name, account number, total amount charged by Sheridan, and the amount already paid on each

medical claim. *Id.* Sheridan's Spreadsheets also contained specific highlighted columns labeled "Aetna Net Due," reflecting Sheridan's purported damages in this lawsuit. *Id.*

Defendants claim that four of the total line item claims show an expected payment (*e.g.*, "Net Due" or "Bal Due") for treatment where coverage was *denied entirely* on medical claims that Sheridan submitted by assignment from Members. Additionally, Defendants identified one medical claim from Sheridan's Spreadsheets, which they argue challenges Aetna's handling of FEHBA claims under benefit plans offered by the Office of Personnel Management ("OPM"). Defendants claim that they timely removed this case within thirty days of Sheridan's disclosure of its Spreadsheets – "when it became clear, for the first time, that Sheridan was disputing coverage determinations under both ERISA and FEHBA plans" – on December 10, 2015, pursuant to 28, U.S.C. § 1446(b)(3).

### III. Legal Standard

"It is axiomatic that federal courts are courts of limited jurisdiction." *Ramirez v. Humana, Inc.*, 119 F. Supp. 2d 1307, 1308 (M.D. Fla. 2000) (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). Removal to federal court is proper in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). To establish original jurisdiction, an action must satisfy the jurisdictional prerequisites of either federal question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. Federal question jurisdiction exists when the civil action arises "under the Constitution, laws, or treaties of the United States." *Id.* § 1331. Diversity jurisdiction exists when the parties are citizens of different states, and the amount in controversy exceeds $75,000. *See id.* § 1332(a). The removing party has the burden of showing that removal from state court to federal court is proper. *Mitchell v. Brown & Williamson*

*Tobacco Corp.*, 294 F.3d 1309, 1314 (11th Cir. 2002). "To determine whether the claim arises under federal law, [courts] examine the 'well pleaded' allegations of the Complaint and ignore potential defenses." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 5 (2003). An exception to this rule, however, provides that "[w]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed. This is so because when the federal statute completely pre-empts the state law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004) (internal citations and quotation marks omitted). "ERISA is one of those statutes." *Id.*

The procedure for removal is governed by 28 U.S.C. § 1146. Generally, a notice of removal "shall be filed within thirty days after the receipt by the defendant . . . of a copy of the initial pleading." 28 U.S.C. § 1446(b)(1). Except in cases where removal is based on diversity of citizenship, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(2). "Courts have held that responses to request for admissions, settlement offers, and other correspondence between parties can be 'other paper' under 28 U.S.C. § 1446(b)." *Wilson v. Target Corp.*, 2010 WL 3632794, at *2 (S.D. Fla. Sept. 14, 2010) (citing *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1212 n. 62 (11th Cir. 2007)) (discussing the judicial development of the term "other paper"); *Wilson v. Gen. Motors Corp.*, 888 F.2d 779, 780 (11th Cir. 1989) (finding that response to requests for admissions constituted "other paper")). "The definition of "other paper" is broad and may include any formal or informal communication received by a

defendant." *Id.* (citing *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 755 (4th Cir. 1996)).

The removing party bears the burden of demonstrating complete preemption and, where jurisdiction is not absolutely clear, the Eleventh Circuit favors remand. *Oskars, Inc. v. Bennett & Co., Inc.*, 132 F. Supp. 1333, 1334 (M.D. Ala. 2001) (granting remand because plan not governed by ERISA) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)); *Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir. 2003) (removal statutes should be construed narrowly, and all doubts resolved in favor of remand). In meeting its burden, a defendant must provide facts justifying removal. *See Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1242 (11th Cir. 2001) (remanding where health insurer failed to provide proof in support of removal). A defendant seeking late removal on the basis of "other papers" bears the heightened burden of proving that "the case 'has become removable' due to changed circumstances." *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 760 (11th Cir. 2010) (citing 28 U.S.C. § 1446(b)) ("Although the second paragraph of § 1446(b) offers an additional avenue for removal, that road is not an easy one for defendants to travel."). "Under either paragraph, the documents received by the defendant must contain an unambiguous statement that clearly establishes federal jurisdiction." *Lowery*, 483 F.3d at 1215.

**IV. Analysis**

Deciding whether this case should be remanded to state court raises two issues. The first is whether Defendants timely filed the notice of removal, and the second is whether the state law claims stated in Plaintiff's Complaint implicate federal law, rendering removal to federal court proper. However, here, the two issues are inextricably intertwined. Whether notice was timely depends upon whether Sheridan's Spreadsheets alerted Defendants to "changed circumstances" sufficient to satisfy the "unambiguous" requirement for "other paper" removal under 28 U.S.C. §

1446(b). To the extent that Sheridan's Spreadsheets do not implicate federal law, they cannot constitute a basis for changed circumstances permitting removal.

Plaintiff argues that Defendants' removal is untimely because Defendants filed a notice of removal more than 30 days after service of the Complaint, and the disclosure of Sheridan's Spreadsheets had no jurisdictional impact on the claims stated therein. Motion at 3. Sheridan further avers that, after receiving the Complaint, "Defendants embarked on a series of attempts to create a basis for removal," eventually "cherry-pick[ing]" a tiny portion of discovery produced by Sheridan over the first six months of the state court case. *Id.* Plaintiff notes that Sheridan's Spreadsheets, containing the five line items singled out by Defendants, "were produced together with, and clarified by, related sworn discovery responses (provided by Sheridan before removal) that clearly state Sheridan is neither asserting claims for, or seeking damages for 'denied care.'" *Id.* at 4-5 (emphasis in original). Defendants respond that Plaintiff's characterization of this suit as one focused on "rate of pay," as opposed to "right to pay," is "disingenuous" and controverted by the Spreadsheets. Resp. at 9. When Sheridan later identified the medical claims at issue, Defendants contend, its claims list included assigned medical claims where the amounts allegedly owed by the Defendants involved (i) the denial of benefits under the terms of self-funded ERISA plans, and (ii) coverage determinations made by Aetna pursuant to FEHBA. *Id.* Therefore, Defendants' maintain, the Notice of Removal was timely and proper under the circumstances. *Id.*

### A. Whether ERISA preemption applies

"[I]f an individual, at some point could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA §

502(a)(1)(B)." *Davila*, 542 U.S. at 210. ERISA § 502(a)(1)(B) provides: A civil action may be brought – (1) by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce the rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1345 (11th Cir. 2009) (applying *Davila* as two-part test: "(1) whether the plaintiff could have brought its claim under § 502(a); and (2) whether no other legal duty supports the plaintiff's claim").

### 1. Whether Plaintiff could have brought its claim under § 502(a)

The first part of the test "is satisfied if two requirements are met: (1) the plaintiff's claim must fall within the scope of ERISA; and (2) the plaintiff must have standing to sue under ERISA." *Connecticut State Dental*, 591 F.3d at 1351 (citations omitted).

#### i. Whether Plaintiff's claim falls within the scope of ERISA

To address whether the claim falls within the scope of ERISA, the Eleventh Circuit has adopted a distinction between two types of claims, as discussed *infra*: "those challenging the 'rate of payment' pursuant to the provider-insurer agreement, and those challenging the 'right to payment' under the terms of an ERISA beneficiary's plan." *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1302 (11th Cir. 2010) (citing *Connecticut State Dental*, 591 F.3d 1349-50). "[A] 'rate of payment' challenge does not necessarily implicate an ERISA plan, but a challenge to the 'right of payment' under an ERISA plan does." *Id.*; *see also Connecticut State Dental*, 591 F.3d at 1351 ("What we have, then, is really a hybrid claim, part of which is within § 502(a) and part of which is beyond the scope of ERISA. Because [Plaintiffs] complaint, at least in part, is about denials of benefits and other ERISA violations, their breach of contract claim implicates ERISA.").

Defendants argue that Plaintiff's lawsuit amounts to a hybrid claim wherein, for certain medical claims, any additional amounts payable necessarily challenge the denial of benefits under ERISA plans. Resp. at 11. Defendants illustrate this argument by providing an example of a claim at issue showing a balance owed to Sheridan as a result of a lack of ERISA plan coverage for the medical services provided to the Member. *See id.* at 12. The recipient of these services, according to Defendants, could have brought claims for the denial of benefits under the applicable ERISA plan. *Id.* On the other hand, Plaintiff contends that whether claims for denial of benefits could have been brought is irrelevant; Sheridan is in fact suing Defendants solely for breach of its agreement, and in so doing, does not assert allegations of any ERISA violations. The Court agrees. No interpretation of the ERISA-regulated employee health benefit plan is necessary to decide this case.

This Court rejected a similar argument made by another health provider in *South Broward Hospital District v. Coventry Health and Life Insurance, Co.*, Case No. 14-cv-61157-BB, ECF No. [30], at 9 (S.D. Fla. Nov. 14, 2014). In that case, an entire section of the plaintiff's complaint was dedicated to the "Inappropriate Denial of Claims," in which plaintiff health provider alleged violation of its agreement with defendant health insurance companies because of retroactive denials. *Id.* The Court, therefore, reasoned that determining the parties' obligations as to retroactive denials of claims would require analyzing whether the claims in question involved a covered service – and any such interpretation of what services are covered would necessarily constitute a "right of payment" dispute. *Id.* at 10. Thus, the Court held that "[b]ecause [the plaintiff] complain[s], at least in part, about denials of benefits and other ERISA violations, [its] breach of contract claim implicates ERISA." *Id.* (quoting *Connecticut State Dental*, 591 F.3d at 1351). In contrast, there is not a single allegation within Sheridan's

Complaint that discusses, alleges, or implies that Sheridan seeks damages for the denial of health care benefits. *Cf. Borrero*, 610 F.3d at 1304-05 ("These claims – about wrongfully denied benefits based on determinations of medical necessity – relate directly to the coverage afforded by the ERISA plans. Many of the other allegations in the complaint, for practices like downcoding and bundling, are based on independent provider-insurer contracts and do not implicate ERISA."). The Court finds that the Plaintiff's claim does not fall within the scope of ERISA.

### ii. Whether Plaintiff has standing to sue under ERISA

ERISA § 502(a)(1)(B) states that a claim may be brought by a "participant or beneficiary." Plaintiff, in the present case, is a healthcare provider. "Healthcare providers . . . generally are not considered 'beneficiaries' or 'participants' under ERISA." *Connecticut State Dental*, 591 F.3d at 1347 (citing *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001)). However, "it is well-established in this and most other circuits that a healthcare provider may acquire derivative standing to sue under ERISA by obtaining a written assignment from a 'participant' or 'beneficiary' of his right to payment of medical benefits." *Id.* Therefore, a claim for benefits by a healthcare provider pursuant to a written assignment may fall within the scope of § 502(a). *Id.*

Plaintiff does not directly confirm or refute the existence of patient assignments pertaining to claims within Sheridan's Spreadsheets; rather, Plaintiff contends that any assignment of benefits is immaterial. Sheridan maintains that Defendants have failed to establish standing, because they have not shown that Plaintiff is asserting a claim under an assignment. In other words, no standing exists because Plaintiffs do not "affirmatively stand[] in the shoes of a plan beneficiary." Motion at 15. Plaintiff relies on *Rocky Mountain Holdings, LLC v. Blue*

*Cross & Blue Shield of Florida, Inc.*, 2008 WL 3833236, at *4 (M.D. Fla. Aug. 11, 2008), to argue that "[s]imply because a health care provider may have an assignment of benefits does not merit ERISA preemption where the provider asserts an independent state law claim rather than a claim as an assignee." Mot. at 15 (citing *Rocky Mountain Holdings*, 2008 WL 3833236, at *4 (granting motion to remand despite defendants' presentation of "a sample of twenty claim forms which indicate[d] that [] an existing 'signature on file' assign[ed] the patient's medical benefits to one of the [p]laintiffs," because the plaintiffs were not attempting to stand in the shoes of patients, and their claims were unrelated to the rights of the patients)). Accordingly, even if Defendants presented evidence sufficient to prove an assignment of benefits, such an assignment would be insufficient to make Plaintiff a beneficiary in this case. *See id.* As Sheridan has repeatedly emphasized, "[it is] not attempting to stand in the shoes of the patients, and [its] claims are unrelated to the rights of the patients." *Id.* Instead, Plaintiff is suing under Florida state law for breach of contract, which "operates independently of the terms of the health plan." *Id.* For this reason, Sheridan does not have standing to sue under ERISA. The instant facts, therefore, fail the first part of the *Davila* test on both counts.

### 2. Whether no other legal duty supports Plaintiff's claim

The second *Davila* inquiry is whether Plaintiff's claims are founded upon a legal duty independent of ERISA. Where a plaintiff seeks relief to enforce rights under an independent agreement with a defendant, federal subject matter jurisdiction cannot be established. *See, e.g.*, *Ghee v. Reg'l Med. Ctr. Bd.*, 2015 WL 7755392, at *3 (N.D. Ala. Dec. 2, 2015). As explained above, Sheridan has brought claims for breaches of contract and declaratory relief arising under independent contractual agreements with the Defendants – first, under HBP contracts and, later, under Continuing Offers – agreements that do not involve ERISA benefit plans. *See* Compl. ¶ 3.

11

Rather, Sheridan's breach of contract claims merely require examination of the HBP contracts to determine whether the elements of contract formation exist and whether provisions of the contract were materially breached. *See Federico v. Excelsior Benefits, LLC*, 2014 WL 2600110, at *4 (M.D. Fla. June 10, 2014) ("Under Florida law, to adequately state a claim for breach of contract, a plaintiff must establish: (1) a valid contract; (2) a material breach; and (3) damages."). Similarly, resolution of Sheridan's implied-in-fact and implied-in-law contract claims under its Continuing Offers do not rest upon the interpretation of an ERISA plan nor on any assignment of a participant's rights under an ERISA plan. These claims require only a finding that Sheridan's Continuing Offers constituted valid contractual offers that were accepted by Defendants' conduct, and that the Defendants then failed to pay the stated contract price; or, in the alternative, that an obligation was created under which Defendants received a benefit that requires compensation. *See, e.g.*, *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 387 (Fla. 4th DCA 1997). Therefore, Sheridan's implied-in-fact and implied-in-law contract claims arise out of an independent duty created by law rather than the terms, or existence, of any federal benefit plan. *Id.* at 386.

Moreover, the preemptive scope of ERISA is "not limitless"; rather, where state law causes of action make no reference to ERISA and function irrespective of federal statute, they will not be preempted. *Hiller v. Wachovia Corp.*, 2008 WL 4938424, at *1 (S.D. Fla. Nov. 18, 2008). As the Eleventh Circuit has observed, "the mere existence of an ERISA plan is not enough for preemption." *Id.* (quoting *Forbus v. Sears Roebuck & Co.,* 30 F.3d 1402, 1405 (11th Cir. 1994)). Sheridan's action is predicated on the existence of independent contracts with Defendants and the alleged breaches of those contracts. Clearly, ERISA was not enacted to "enforce the general principle that [contractual] promises ought to be kept." *Id.*

### B. Whether the Federal Officer Removal Statute Applies

Finally, as a separate basis for federal jurisdiction, Defendants argue that the Federal Officer Removal Statute, 28 U.S.C. § 1442, warrants removal as Sheridan's Spreadsheets allegedly show that it challenges coverage determinations under certain FEHBA plans. Specifically, Defendants claim that they administer these plans at the behest of OPM whose members' benefit claims are at issue in this lawsuit. For this reason, Defendants contend that Sheridan's claims "necessarily arise[]" from Defendants' performance of its claims administration duties under OPM. Resp. at 23-24.

"A state-court action against any person acting under the direction of an officer of the United States or its agencies can be removed to federal court pursuant to § 1442(a)(1)." *Marley v. Elliot Turbomachinery Co., Inc.*, 545 F. Supp. 2d 1266, 1271 (S.D. Fla. 2008). Even where federal jurisdiction may not be apparent within the four corners of a complaint, Congress has provided § 1442(a)(1) as means for a federal court to hear cases "where federal officials must raise defenses arising from their official duties." *Id.* at 1271 (quoting *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996)). A defendant may remove a case to federal court under § 1442(a)(1) if two elements are met. "First, the defendant must advance a 'colorable defense arising out of [his] duty to enforce federal law.'" *Magnin*, 91 F.3d at 1427 (quoting *Mesa v. California*, 489 U.S. 121, 133 (1989) (further citations omitted)). "Second, the defendant must establish that there is a 'causal connection between what the officer has done under asserted official authority' and the action against him." *Id.* (quoting *Maryland v. Soper*, 270 U.S. 9, 33 (1926)). The federal defense need only be "colorable"; the defendant need not establish that he will necessarily be successful. *Magnin*, 91 F.3d at 1429.

The Court finds *Baptist Hosp. of Miami, Inc. v. Humana Health Insur. Co. of Florida*,

*Inc.*, instructive. Case No. 15-cv-22009, ECF No. [48] (S.D. Fla. Aug. 19, 2015); ECF No. [42-1] (same). In *Baptist Hospital*, as here, a group of non-profit hospitals sued Humana in state court for breaches of health care contracts and continuing offer agreements. *Id.* at 1. Humana removed the action to federal court under the Federal Officer Removal Statute, claiming that it was acting on behalf of the federal government in administering certain FEHBA plans at issue in the litigation. *Id.* at 5. Nevertheless, the Court rejected Humana's arguments for FEHBA preemption, reasoning that because Baptist Hospital was suing Humana for independent contractual claims addressing reimbursement rates – the same causes of action that Sheridan brings – the lawsuit did not implicate actions taken under color of office:

> Based on this record, Defendants are not entitled to removal for acting as federal officers pursuant to their contracts with OPM because they are not being sued for actions taken under such color of office. Rather, Plaintiffs assert a contract claim based on separate Letters of Agreement, which set forth the specific reimbursement rates for the medical services provided. There is no reference to a specific FEHBA plan, the plan provisions, or any review process mandated by OPM. That covered services are defined based on the relevant member health benefits plan does not mean that a right to payment is based on the administration of the FEHBA plan. Instead, the right to payment arises out of a Letter of Agreement that does not expressly make a claim subject to the FEHBA plan's provisions and processes.

*Id.* at 7.

Likewise, in the instant action, Sheridan is suing Defendants for alleged breaches of independent agreements that do not reference or incorporate FEHBA plans or terms. *See* ECF No. [42] (Reply) at 7. Sheridan's underpayment claims are, therefore, based, not on the existence of FEHBA plans, but upon the original Agreements and Continuing Offers. *See id.* Additionally, to the extent that the Complaint can be construed to implicate FEHBA plans in any way, Sheridan expressly carved out such claims relating to government-sponsored health care therein. *See* Compl. ¶ 17 ("Defendants also offer products relating to government-sponsored

14

programs such as Medicare Advantage and managed Medicaid, which are specifically excluded from this action."); *cf. Anesthesiology Associates of Tallahassee, Florida, P.A. v. Blue Cross Blue Shield of Florida, Inc.*, 2005 WL 6717869, at *2 (11th Cir. 2005) (finding federal jurisdiction where provider sued Blue Cross for denial of coverage for services allegedly covered by Medicare plans); *Peterson v. Blue Cross/Blue Shield of Texas,* 508 F.2d 55, 56-58 (5th Cir. 1975) (holding removal appropriate where physician brought suit for tort damages based on his suspension from the Medicare program by Medicare administrators pursuant to their official duties).

In comparison to many of the cases cited by Defendants, the Complaint does not allege any claims for "right to payment" or coverage under government plans, nor does it challenge the actions of Defendants with respect to their administration of any Medicare, Medicaid, or FEHBA plan. Rather, it disputes the rates that Defendants have paid to Sheridan as incongruous with the governing terms of independent contracts between the parties – contracts that contain no reference to government plans. Therefore, the Southern District of Florida is not the appropriate forum for this dispute.

**V. Conclusion**

For the foregoing reasons, the Court rejects Defendants' arguments for federal question jurisdiction pursuant to ERISA preemption and the Federal Officer Removal Statute. The particular facts of this litigation do not support the Court's exercise of jurisdiction and, thus, require remand to state court. Ruling otherwise would permit parties to manufacture federal jurisdiction in any action involving a health insurer that is in contractual privy with the government, notwithstanding the fact that the government relationship is not implicated in any way by the lawsuit.

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion to Remand, **ECF No. [36]**, is **GRANTED**.  This case is **REMANDED** to the Seventeenth Judicial Circuit Court of Florida, for Broward County, Florida.  The Clerk is **DIRECTED TO CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 8th day of February, 2016.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record